IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America,                              )
    U.S. Department of Justice,                       )
    950 Pennsylvania Ave., N.W.                    )
    Washington, D.C. 20530,                          )
                                     )
        Plaintiff,                                           )
                                     )
v.                                                            )          Civil No.
                                     )
                                     )
Kellogg Brown & Root Services, Inc.,              )
    4100 Clinton Dr., Houston, Texas  77020,  )
                                     )
        Defendant.                                         )
_____)

## COMPLAINT

The United States of America brings this action against Kellogg Brown & Root Services, Inc. (KBR), for relief under the False Claims Act, 31 U.S.C. § 3729, and the common law for KBR's knowing submission of false claims to the United States Army (Army), Department of Defense (DoD), for the cost of unauthorized private armed security in Iraq, in violation of KBR's contract with the Army. The United States alleges as follows:

### Jurisdiction and Venue

1.    Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1345.

2.    Venue is proper in this district under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

### Parties

3.    Plaintiff is the United States of America, acting on behalf of the Army.

4.     Defendant KBR is a corporation organized under the laws of the State of Delaware and transacts business within this District.

## Factual Allegations

### *Introduction*

5.     On December 14, 2001, the Army awarded KBR contract number DAAA09-02-D-0007, also known as LOGCAP III. LOGCAP III implements the Army's Logistics Civil Augmentation Program (LOGCAP), which provides for the use of private contractors to perform non-combat services in support of military operations around the world. This support includes such services as transportation, maintenance, facilities management, and dining facilities management.

6.     LOGCAP III is an indefinite delivery/indefinite quantity contract in which the government's requirements are specified through a series of task orders. Under the task orders at issue here, KBR is reimbursed for its costs of performing the task order plus a one percent base fee or profit, plus an award fee up to two percent.

7.     KBR performs a significant portion of its obligations under LOGCAP III through subcontractors. These subcontractors bill KBR for the costs of the services they provide pursuant to their subcontracts with KBR. KBR, in turn, bills the Army for its costs incurred under the subcontracts plus associated fees. The costs at issue here are those related to the provision of private, armed security in Iraq, from 2003 through 2006, not authorized under LOGCAP III, the Federal Acquisition Regulation, or other authorities incorporated by reference.

8.     Under LOGCAP III, the primary responsibility for providing force protection to KBR, its employees, and its subcontractors is assigned to the Army, not to KBR.

9.     In fact, under LOGCAP III and related laws and regulations incorporated by

-2-

reference, KBR and its subcontractors are absolutely prohibited from possessing or using privately owned weapons, unless explicitly authorized by the appropriate military command.

10.     Except for a few possible minor exceptions, KBR never obtained the required military authorization for itself or its subcontractors to carry firearms.

11.     Despite these restrictions and the lack of authority, KBR awarded subcontracts to three private security companies to provide armed personal security details for its executives and awarded additional subcontracts to more than 30 other companies that employed their own private armed security.  In addition, KBR armed some of its own employees without authorization.

12.     KBR presented claims for payment to the Army knowing that they included the costs of private, armed security services prohibited by LOGCAP III.

*LOGCAP III and Related Restrictions on Private Armed Security*

13.     In a war zone such as Iraq, the military has an obvious and critical need to control the possession and use of weapons by its own personnel, as well as by the civilians working by its side.  Military commanders need to know and contain who is armed and what weapons are being used.  They need to be able to establish minimum qualifications and required training, and to ensure that those who carry weapons understand and abide by the rules for the use of deadly force.  For these reasons, LOGCAP III and authorities incorporated by reference are very clear about the lawful use of firearms by contractor personnel in Iraq.  These provisions are detailed below.

14.     First and foremost is a firm prohibition on the "[p]urchase, possession, use or sale of privately owned firearms, ammunition, explosives, or the introduction of these items" into the United States Central Command (USCENTCOM) Area of Responsibility (AOR), which includes

-3-

Iraq. This prohibition was put in place by General Tommy L. Franks, Army Commander in Chief, on December 19, 2000, by USCENTCOM General Order No. 1A, ¶ 2(a), and remains in place under the authority of superceding USCENTCOM General Order No. 1B, ¶ 2(a), issued by General John P. Abizaid on March 13, 2006.

15.     By their terms, these orders apply to "civilians serving with, employed by, or accompanying the Armed Forces of the United States, while present in the USCENTCOM AOR." USCENTCOM General Order Nos. 1A and 1B. This would, of course, include KBR, its employees, its subcontractors, and its subcontractors' employees and subcontractors.

16.     The prohibition against the use of privately owned firearms can be waived or modified, but only by the Deputy Commander in Chief, USCENTCOM, or his designee under General Order No. 1A, or the Deputy Commander and Chief of Staff, USCENTCOM, or his designee, under General Order No. 1B.

17.     These orders apply to LOGCAP III by force of Clause H-13. Clause H-13 requires KBR to comply with, and to ensure that its subcontractors comply with, all applicable DoD directives, laws, and international agreements. Specifically, Clause H-13 states:

> The contractor shall ensure that all personnel hired by or for the contractor will comply with all guidance, instructions, and general orders applicable to U.S. Armed Forces and DoD civilians as issued by the Theater Commander or his/her representative. This will include any and all guidance and instructions issued based upon the need to ensure mission accomplishment, force protection, and safety, unless directed otherwise in the task order SOW [Statement of Work].

> The contracting officer is the only authorized official who shall increase, decrease, or alter the scope of work to be performed, and any orders or instructions interpreted by the contractor as impacting the scope or cost of the contract. The contractor shall comply, and shall ensure that all deployed employees, subcontractors, subcontractors employees, invitees and agents

> comply with pertinent Service and Department of Defense
> directives, policies, and procedures, as well as federal statutes,
> judicial interpretations and international agreements (e.g., Status of
> Forces Agreements, Host Nation Support Agreements, etc.)
> applicable to U.S. Armed Forces or U.S. citizens in the area of
> operations.
>
> The contractor shall at all times be responsible for the conduct of
> its employees and those of its subcontractors and invitees.

18.     In November 2005, KBR and the Army executed Modification 00012 to the

LOGCAP III contract to incorporate Defense Federal Acquisition Regulation Supplement

§ 252.225-7040, which effectively allowed KBR and its subcontractors limited use of privately

owned weapons. Consistent with USCENTCOM General Order No. 1A, Modification 00012

clearly states that privately owned weapons can be used only if authorized by the Combatant

Commander who, for Iraq, is the USCENTCOM Commander. Modification 00012 also required

approval by the contracting officer. With possible minor exceptions, KBR never obtained such

authorization or approval either for itself or for any of its subcontractors.

19.     While USCENTCOM General Order Nos. 1A and 1B, and LOGCAP III

Modification 00012 address the use of *privately owned* weapons, LOGCAP III, Clause H-21,

addresses the use of *government furnished* weapons. The permissible use of government

furnished weapons, however, is no different in terms of authorization than the use of privately

owned weapons. In other words, the use of government furnished weapons is strictly forbidden

unless authorized by the USCENTCOM Commander. Clause H-21 also repeats the prohibition

on privately owned weapons and imposes on KBR the duty to ensure that its employees and

subcontractors comply with United States and Iraqi laws. Specifically, Clause H-21 states:

> Whether contractor personnel will be permitted to carry a
> government furnished weapon for self-defense purposes in the
> Area of Operations (AO) is at the discretion of the Theater

-5-

Commander. However, contractor personnel will not possess
personally owned firearms in the AO. The government may at its
discretion issue weapons and ammunition (M9 Pistols) for self-
defense to the contractor employees . . . . If accepted the
Contractor will maintain a listing of employees possessing a
government firearm and provide notification to the Contracting
Officer . . . . Also when accepted, only military issued
ammunition may be used in the weapon.

Contractors will screen employees, and subcontractors, to ensure
that employees may be issued a weapon in accordance with U.S. or
applicable host nation laws. Evidence of screening will be
presented to the contracting officer.

20.     LOGCAP III, Clause H-13, also required KBR to comply with orders and

directives issued by the Coalition Provisional Authority (CPA), and to ensure similar compliance

by its subcontractors.[1] CPA Order No. 3, Section 3 (Dec. 31, 2003), required private armed

security companies to be licensed by the Iraqi Ministry of the Interior. CPA Memorandum

No. 17, Section 6 (June 26, 2004), required private security companies to be registered with the

Iraqi Ministry of the Interior. On information and belief, not all of KBR's subcontractors

complied with CPA Order Nos. 3 and 17, nor did KBR meet its obligation to ensure compliance.

(Even when licensing and registration requirements were satisfied, carrying weapons was still

prohibited without appropriate USCENTCOM authorization and contracting officer approval.)

21.     Consequently, the possession and use of both privately owned and government

furnished firearms by KBR and its subcontractors were strictly prohibited unless authorized by

the USCENTCOM Commander, or his designee, and approved by the contracting officer, *and* in

compliance with the CPA's requirements of licensing and registration with the Iraqi Ministry of

---

[1] The CPA was the governing authority of Iraq during the period of Coalition control.
CPA Orders and Memoranda were incorporated in the governing law of the State of Iraq
following the transition to Iraqi rule.

-6-

the Interior. Nevertheless, this did not leave KBR and its subcontractors without force

protection. Consistent with the restrictions and prohibitions on private armed security,

LOGCAP III, Clause H-16, assigned primary, if not sole, responsibility for force protection for

KBR and its subcontractors to the military at a level "commensurate with that given to [DoD]

civilians in the operations area." Specifically, Clause H-16 states:

> While performing duties [in accordance with] the terms and
> conditions of the contract, the Service Theater Commander will
> provide force protection to contractor employees commensurate
> with that given to Service/Agency (e.g., Army, Navy, Air Force,
> Marine, DLA) civilians in the operations area unless otherwise
> stated in each task order.

### *KBR's Violation of LOGCAP III and Other Authorities Restricting Private Armed Security*

22.     Without authorization as required by LOGCAP III and USCENTCOM General

Order Nos. 1A and 1B, and without approval of the LOGCAP III contracting officer, KBR hired

private armed security contractors Triple Canopy, Omega Risk Solutions, and Al Dhahir to

provide personal security details for its executives in Iraq, rather than relying on military force

protection. KBR also used four of its own employees as armed security for executives. KBR

billed the dominant portion of the costs attributable to those services to the Army indirectly

through an overhead account.

23.     In addition, more than 30 of KBR's other subcontractors used private armed

security in Iraq without required authorization. KBR either knew that these subcontractors were

using unauthorized and, therefore, prohibited private armed security, or did not ensure that their

use of private armed security was authorized as it was required to do under LOGCAP III. KBR

also failed to ensure that all the subcontractors were properly licensed and registered with the

Iraq Ministry of the Interior, as required by CPA Order Nos. 3 and 17.

-7-

24.     In particular, ESS Support Services Worldwide (ESS), a dining facilities subcontractor, routinely hired private armed security companies to shuttle managers, personnel, and payroll around Iraq, rather than arrange to travel with military convoys as required by LOGCAP III. ESS also used private armed security to provide static guards for its offices in Iraq, rather than rely on military force protection, again in violation of LOGCAP III. KBR knew that ESS hired private armed security and either knew or should have known that the cost of these services inflated the cost of ESS' subcontracts. KBR had awarded the subcontracts without adequate price competition and with reckless disregard for the costs that it would be passing on to the Army. ESS incurred significant costs for unauthorized private armed security costs, which KBR passed on to the Army, plus associated fees, under LOGCAP III.

**KBR Knew That Its Claims Were False**

25.     KBR knew and understood that the use of private armed security without authorization by the USCENTCOM Commander or his designee, without approval of the contracting (when applicable), and without the companies being licensed and registered by the Iraqi Ministry of the Interior, was prohibited under LOGCAP III and other authorities incorporated into the contract by reference. KBR further knew that any claims for such costs would be false.

26.     Despite the clear prohibitions on private armed security, KBR awarded subcontracts to three companies solely for the purpose of providing private security details to its executives and other personnel, without obtaining the required authority from the USCENTCOM Commander or his designee and without approval of the contracting officer (when required). KBR also armed four of its own employees, without obtaining the required authority. KBR passed the costs of these services, plus associated fees, on to the Army, knowing that they were

-8-

not permitted under LOGCAP III.

27.     Despite the clear prohibitions on private armed security, KBR awarded
subcontracts to more than 30 companies that used private armed security in connection with
performing dining facilities management and other services, without obtaining the required
authority from the USCENTCOM Commander or his designee, without obtaining the approval of
the contracting officer (when required), and without ensuring that those companies were licensed
and registered with the Iraqi Ministry of the Interior, as required under LOGCAP III and CPA
Order Nos. 3 and 17. KBR either knew that these companies were using unauthorized private
armed security services or failed in its obligation to ensure proper authorization, licensing, and
registration. KBR knowingly passed the costs of these unauthorized services on to the Army.

28.     KBR's Senior Contracts Manager for LOGCAP III, Mary L. Wade, in an
August 30, 2004 e-mail, acknowledged that "[i]f subs are using their own PSD [Personal
Security Details] then the cost could be considered unallowable by both the client [the Army] and
DCAA [the Defense Contract Audit Agency] as the government has the responsibility to provide
force protection."

29.     Later, in an April 4, 2007 response to questions by the Army regarding the
unauthorized use of private armed security, Ms. Wade admitted that KBR did not seek
USCENTCOM approval for itself or its subcontractors.

30.     In another internal e-mail dated June 3, 2004, KBR's lead subcontract
administrator for Iraq, James Ray, asserted that KBR should not hire subcontractors who used
private security because "it will effect a material change in our contract."

31.     Mr. Ray's statement is consistent with KBR's standard supplementary agreement
with its subcontractors, including ESS, that they travel only in convoys under military control

-9-

and adhere to all applicable military requirements and local law. The fact that KBR consistently rebuked its subcontractors for violating this provision and for providing their own armed security, demonstrates that KBR knew its subcontractors were using unauthorized private security and that KBR knowingly passed on the costs of those services to the Army.

32. In 2004, the Army and KBR discussed modifying LOGCAP III to allow the use of private armed security for convoys or the arming of KBR security personnel. The modification was never executed, in part because KBR had concerns over liability. Nevertheless, these discussions demonstrate that KBR knew and understood that a contract modification would be necessary to allow for the use of private armed security contractors or the arming of KBR personnel, and that without such a modification, KBR could not charge the Army for the costs of private armed security services.

## FIRST CAUSE OF ACTION

### False Claims Act, 31 U.S.C. § 3729

33. The United States realleges paragraphs 1 through 32, and they are incorporated herein by reference as if they were set forth in full.

34. Beginning in 2003, and continuing through at least 2006, KBR knowingly presented or caused to be presented to the United States false or fraudulent claims for payment under LOGCAP III, which claims were false or fraudulent because KBR then knew that they contained costs for services for or that included improper use of private armed security, all in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

35. As a result of KBR knowingly presenting these false or fraudulent claims to the United States, the United States paid the claims and suffered damages in an amount to be determined at trial.

-10-

## SECOND CAUSE OF ACTION

### Breach of Contract

36.     The United States realleges paragraphs 1 through 32, and they are incorporated herein by reference as if they were set forth in full.

37.     KBR breached its LOGCAP III contract with the Army by using and allowing the use of improper private armed security services.

38.     As a consequence, the United States has suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

39.     The United States realleges paragraphs 1 through 32, and they are incorporated herein by reference as if they were set forth in full.

40.     As a result of KBR's acts stated above, KBR has been unjustly enriched and has received profit and other monies to which it is not entitled by contract or otherwise, in an amount to be determined at trial. In equity and good conscience, KBR should not retain these monies.

## FOURTH CAUSE OF ACTION

### Payment by Mistake

41.     The United States realleges paragraphs 1 through 32, and they are incorporated herein by reference as if they were set forth in full.

42      As a result of KBR's acts stated above, the United States paid claims submitted for payment in the mistaken belief that the amounts claimed were for services provided in accordance with contract terms. As a result, the payment of those claims was by mistake and not authorized by law.

-11-

43. The United States has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays for judgment against KBR as follows:

Under the first cause of action, damages as provided by statute, plus such civil penalties as are allowable by law, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under the second cause of action, damages in the amount of the loss caused to the United States by KBR's' breach of contract, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under the third cause of action, judgment in the amount by which KBR has been unjustly enriched, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under the fourth cause of action, damages in the amount of the loss caused to the United States by the mistaken and unauthorized payments, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR., DC Bar # 447889
United States Attorney

JOYCE R. BRANDA, DC Bar # 246363
JUDITH RABINOWITZ, DC Bar # 940320
STANLEY E. ALDERSON, DC Bar # 357945
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-6696

Attorneys for Plaintiff United States of America