UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 10-cv-530 (RCL) |
| KELLOGG BROWN & ROOT SERVICES, INC. | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Before the Court is plaintiff's Motion [61] to Dismiss KBR's Counterclaim and to Strike KBR's First Affirmative Defense. Upon consideration of the Motion, Opposition, Reply, the entire record, and the applicable law, the Court will grant plaintiff's Motion, dismiss defendant's first counterclaim without prejudice, and strike its first affirmative defense.

**I.   BACKGROUND**

As is explained more fully in an earlier opinion of this Court, the United States sued Kellogg Brown & Root Services, Inc. ("KBR") to recover civil penalties and treble damages on over $100 million in allegedly false claims arising from the war in Iraq. *See U.S. v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 146–47 (D.D.C. 2011). The government alleges that, in violation of a logistical services contract awarded to KBR in 2001 (the "LOGCAP III" contract), the company knowingly billed the government for the cost of private security contractors in Iraq. *Id.* at 147. Early in the case, KBR filed a Motion to Dismiss, which the Court granted in part by dismissing the government's claims for unjust enrichment and payment by mistake. *Id.* at 161. However, the Court denied KBR's Motion as to the government's False Claims Act and breach of contract claims. *Id.*

In August 2011, shortly after the Court ruled on KBR's Motion to Dismiss, KBR answered the Complaint, asserting as an affirmative defense that the government materially breached the LOGCAP III contract by "failing to provide the contractually-required force protection." Answer [58] ¶39, Aug. 17, 2011. KBR also brought a counterclaim for recoupment, "arising out of the Government's failure to provide the requisite force protection, in breach of the Government's obligations under LOGCAP III." *Id.* ¶86. The United States then filed the instant Motion, asking the Court to dismiss KBR's counterclaim and to strike its first affirmative defense. Pl.'s Mot. Dismiss [61] 1, Sept. 12, 2011. The government asserts a number of independent barriers to KBR's counterclaim and affirmative defense, including judicial estoppel, the political question doctrine, failure to exhaust administrative remedies, and failure to state a claim. Pl.'s Mem. [61] 1–3.

## II. ANALYSIS

The Court finds that KBR's recoupment counterclaim must be dismissed for failure to exhaust administrative remedies and for failure to state a claim. The Court also finds that KBR's first affirmative defense of material breach must be struck as precluded by the LOGCAP III contract. However, anticipating that KBR may correct the jurisdictional and other defects in its counterclaim and seek leave to amend its answer to include a revised version of that claim, the Court will briefly address other arguments in the parties' briefs, not necessary to the Court's decision, that may emerge again at a later stage of this case, should KBR amend its pleading.

### A. KBR's Counterclaim and First Affirmative Defense Are Not Barred by Judicial Estoppel.

The government's principal argument in its Motion to Dismiss concerns the doctrine of judicial estoppel. Both KBR's recoupment counterclaim and first affirmative defense of material breach depend upon the allegation that the government breached LOGCAP III by failing to

provide adequate force protection. *See* Answer [58] ¶¶39, 45, 47, 50, 86, 88. The government argues that KBR is "judicially estopped from disputing the adequacy of the military's measures for the provision of force protection for KBR and its subcontractors in Iraq" based upon positions it has taken, allegedly inconsistent with its present position, in previous cases. Pl.'s Mem. [1] 1. The Court disagrees.

As is well known, judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)); *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792 (D.C. Cir. 2010). Its purpose is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 750 (citations omitted).

"[S]everal factors typically inform the decision whether to apply the doctrine in a particular case." *Id.*

(1) "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.*

(2) "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create 'the perception that either the first or the second court was misled.'" *Id.* (citations omitted).

(3) "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* at 751. These factors are not "inflexible prerequisites," and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.*

In light of these factors, the Court finds that exercising its discretion to estop KBR from challenging the government's performance of its force protection obligation in the LOGCAP III

3

contract would be inappropriate. KBR's position in this litigation is not "clearly inconsistent" with its position in the tort cases cited by the government, where KBR successfully argued that the political question doctrine barred judicial scrutiny of the military's judgments regarding the provision of force protection in wartime. *See, e.g.*, *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1282–83 (11th Cir. 2009); *see also* Pl.'s Ex. 1 [61-1] at 4–5). *Carmichael*, for example, involved negligence claims brought against KBR by the wife of a U.S. soldier who was seriously injured in Iraq while providing convoy protection. *See Carmichael*, 572 F.3d at 1275–76. KBR persuaded both the district court and the court of appeals that since, at trial, the district could not adjudicate the plaintiff's claims "without reexamining numerous core military decisions"—such as the convoy commander's decisions concerning how fast the convoy would move and the route it would take—the case would unavoidably involve nonjusticiable political questions. *Compare* Pl.'s Ex. 2 [61-2] 31–32 *with Carmichael*, 572 F.3d at 1282–83. Furthermore, KBR successfully argued that the courts were incompetent to develop liability standards for the military. *Compare* Pl.'s Ex. 2 [61-2] 41–42 *with Carmichael*, 572 F.3d at 1288–92.

Although the government argues, correctly, that judicial estoppel is not precluded simply because the *claims* brought in previous litigation are different from the claims in this case, Pl.'s Reply [71] 4–5, the tort settings of KBR's prior litigating positions nevertheless inform the question of whether, in this contract dispute, KBR is "playing fast and loose with the courts" by arguing that this Court *can* review the military's compliance with the force protection obligation in the contract. *See New Hampshire*, 532 U.S. at 750 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Both formally and functionally there are significant differences between using tort standards to challenge a military's decision making and using contract

4

standards to challenge the military's performance of its obligations. Whereas the policies underlying tort law include the deterrence of tortious conduct, *see Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1302 (11th Cir. 1999), contract law focuses upon enforcement of "the bargain that the parties themselves freely made, as . . . expressed in their agreement." *Hershon v. Gibraltar Bldg. & Loan Ass'n, Inc.*, 864 F.2d 848, 853–54 (D.C. Cir. 1989). These differing policies result in important differences in the way tort and contract cases are litigated and decided. While, in a tort setting, the government's conduct would be judged by reference to duties set out in the common law or arising from a statute, in a contract setting the relevant standards are defined by the parties in their contract, and the court's role is to enforce their intent as evidenced by the language of the contract, as illuminated (if necessary) by extrinsic evidence. Therefore, KBR's position now is not "clearly inconsistent" with its position before, since a persuasive argument can be made that the political question doctrine is more likely to pose a problem in tort cases involving the military, where second-guessing its decisions would be the name of the game, than in contract cases, where all the Court would be doing is holding the parties to their bargain. Given these differences, allowing KBR to litigate its counterclaim and assert its first affirmative defense will not create the perception that either this Court or the courts in the tort cases cited by the government have been misled by KBR, nor will it have any negative impact on the integrity of the judicial process. *See New Hampshire*, 532 U.S. at 750. Nor will KBR obtain an unfair advantage here as a result of its taking its current position on the justiciability of its counterclaim. *Id.* at 751.

    Accordingly, the Court rejects this aspect of the government's Motion.

### B. The Government Has Failed to Demonstrate (at this Stage) that the Political Question Doctrine Bars KBR's Counterclaim or First Affirmative Defense.

The government also contends that KBR's position in the previously cited tort cases—namely, that the political question doctrine bars judicial second-guessing of the military's decision making as regards the provision of force protection in Iraq—is the correct position in this case, and that KBR's challenge to the military's performance of its contractual obligation to provide force protection is nonjusticiable. Pl.'s Mem. [61] 11. However, the Court finds that although this case may *potentially* generate nonjusticiable political questions, absent some discovery, and more detailed briefing by the parties specifically concerning the political question problem, the Court cannot perform the "discriminating analysis" required to resolve this problem. *See El Shifa Pharm. Indus. Co. v. U.S.*, 607 F.3d 836, 841 (D.C. Cir. 2010).

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). The doctrine originates in Article III of the Constitution, which limits the judicial power to "cases" or "controversies." U.S. Const. art. III; *see also El Shifa*, 607 F.3d at 840–41. No justiciable "controversy" exists when the issue to be adjudicated is "political" in nature. *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007).

As outlined by the Supreme Court in *Baker v. Carr*, there are six circumstances in which an issue may present a political question:

(1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department";

(2) "a lack of judicially discoverable and manageable standards for resolving it";

(3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion";

(4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government";

(5) "an unusual need for unquestioning adherence to a political decision already made"; or

(6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Baker v. Carr*, 369 U.S. 186, 217 (1962). To find that a political question exists, only one of these factors need be present, not all. *El Shifa*, 607 F.3d at 841. However, courts must conduct "a discriminating analysis of the particular question posed" in the "specific case" to determine whether the political question doctrine bars a claim. *Id.*

The government contends that the military's decision making, as it relates to providing force protection for KBR in Iraq, involves "quintessential military judgments" in areas such as intelligence gathering and analysis, as well as the development of risk assessments and risk management strategies that consider the military's limited resources and threat levels. Pl.'s Mem. [61] 12. The military's judgments include, the government says, decisions to use less, or less visible, force to protect convoys and installations so as to minimize their perceived importance to the enemy. *Id.* The political question doctrine bars the courts from "second-guessing these military decisions and other judgments confided in the Executive and Legislative Branches by the Constitution." *Id.* The government's position is that KBR's counterclaim and affirmative defense "necessarily require" the Court to second-guess such judgments. *Id.* at 13.

Contrary to the government's position, the Court is unpersuaded at this time that KBR's litigating position will "necessarily require" the Court to define force protection standards or adjudge the adequacy of the Army's provision of force protection in Iraq according to some court-made standard. As stated above in the context of the Court's discussion of judicial estoppel, the parties' own contract provides a standard by which to judge the Army's

performance of its force protection obligation, and to the extent that this provision is ambiguous parol evidence may be permitted to clarify the parties' intent.  In either case, the Court would be determining and enforcing the parties' intent, not subjecting the military to standards drawn from the common law or elsewhere.  However, discovery may reveal such conflicting accounts of the Army's force protection obligation in LOGCAP III that the judicial process could amount to judicial identification and application of force protections standards, implicating the political question doctrine more directly.

Consequently, the Court declines at this time to rule on the applicability of the political question doctrine to KBR's counterclaim and first affirmative defense.  However, anticipating that KBR may remedy the defects presented below and seek leave to amend its Answer to include a similar claim in the future, the Court will, at a later point, following some discovery, invite briefing specifically on the question of the applicability of the political question doctrine to KBR's counterclaim.

### C. The Court Lacks Jurisdiction Over KBR's Counterclaim Because It Failed to Exhaust Its Administrative Remedies Before Filing Its Counterclaim.

While the Court declines to dismiss KBR's counterclaim on judicial estoppel or political question grounds, it agrees with the government that it lacks jurisdiction over KBR's counterclaim because the company failed to exhaust its administrative remedies prior to filing it in this Court.

Congress, in passing the Contract Disputes Act ("CDA"), sought "to promote the efficient resolution of contract claims by relying in the first instance upon the contracting officer's general experience in the administration of [g]overnment contracts and specific knowledge of the contract and parties in question." *Blinderman Const. Co. v. U.S.*, 39 Fed. Cl. 529, 560 (1997) (citations omitted).  Accordingly, "[u]nder the CDA, a contractor [must] take

recourse against the government's alleged breach by submitting a written claim to the contracting officer for a final decision prior to commencing suit." *U.S. v. Intrados/Int'l Mgmt. Group*, 277 F. Supp. 2d 55, 63 (D.D.C. 2003) (citing 41 U.S.C. § 605(a)). A federal court "does not have jurisdiction over a new claim or a claim of different scope that was not previously presented and certified to the contracting officer for decision." *Armour of Am. v. U.S.*, 69 Fed. Cl. 587, 590 (2006). A claim is "new" when it does not "arise from the same set of operative facts as the claim submitted to the contracting officer." *Id.* (citations omitted). While the exhaustion requirement "does not require rigid adherence to the exact language of the original administrative CDA claim," the claim must provide the contracting officer with adequate notice of the basis and amount of the claim. *Scott Timber Co. v. U.S.*, 333 F.3d 1358, 1365 (Fed. Cir. 2003). A failure to exhaust administrative remedies under the CDA requires dismissal of the claim. *A&S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 236 (D.C. Cir. 1995).

KBR responds to the government's exhaustion argument by claiming that it "fil[ed] three claims that provided the contracting officer with . . . notice of the basis of [its] counterclaim . . . ." Def.'s Opp'n [69] 21. These claims, KBR argues, "informed the Army that it had breached the LOGCAP III Contract and provide notice of the amount of damages [KBR] was owed." *Id.* However, "[o]ut of an abundance of caution," KBR also filed (after filing its counterclaim) a "protective claim" with the Army. *Id.* In the event that the Court determines that KBR's counterclaim was not exhausted, KBR suggests, the Court can stay the proceedings until the Army (as KBR expects) denies the claim. *Id.* at 22.

As support for its contention that its counterclaim is properly exhausted, KBR has attached (under seal) claims submitted to the contracting officer in October 2007, October 2009, and June 2010. *See* Bhatia Decl. [69-2] 1. However, each of these claims, filed with the

contracting officer prior to KBR's filing of its counterclaim in this Court in August 2011, concerns only a portion of the $103 million disapproved by the government in an August 2009 notice to KBR. Since KBR's recoupment counterclaim seeks an offset for everything the government is asking for in this lawsuit, Answer [58] ¶93, these certified claims for portions of that amount could not have put the contracting officer on notice of the "amount" of KBR's claim, as is required. *See Scott Timber*, 333 F.3d at 1365. Accordingly, the Court lacks jurisdiction over KBR's counterclaim, and the Court will dismiss it. However, this dismissal is without prejudice, and KBR can seek leave to amend its Answer and reassert its counterclaim once the exhaustion requirement is satisfied. Also, in view of the fact that discovery on the government's claims and KBR's counterclaim should proceed simultaneously for the sake of efficiency and judicial economy, the Court will entertain motions from the parties, with fourteen days of this date, debating the advisability of a stay of the proceedings while KBR's September 29, 2011 claim is exhausted.

### D. KBR Has Failed to State a Counterclaim Upon Which Relief Can Be Granted.

In addition to the jurisdictional defect identified above, the Court also concludes that KBR's counterclaim is legally deficient because it fails to allege facts that would show KBR's entitlement to relief.

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v.*

*District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton*, 567 F.3d at 681.

Turning to KBR's counterclaim for recoupment, recoupment is the right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction. *Intrados*, 277 F. Supp. 2d at 57 n.1 (citing *Reiter v. Cooper*, 507 U.S. 258, 264 (1993)). To establish such a claim, the defendant must meet three requirements: (1) "the claim must arise from the same transaction or occurrence as the government's suit"; (2) "the relief sought must be of the same kind or nature as the [government's] requested relief"; and (3) "any damages sought cannot exceed the amount sought by the government's claim." *Id.* at 60 (citations omitted).

The government argues that KBR's recoupment counterclaim is inadequately pled because, while it alleges that the Army breached the LOGCAP III contract by "fail[ing] to provide the requisite force protection," Answer [58] ¶86, nowhere does KBR allege "specifics" concerning "how the military's force protection supposedly failed to meet the contractual guidelines." Pl.'s Mem. [61] 15. Accordingly, the government says, KBR has failed to allege facts sufficient to give rise to a plausible claim that the Army breached the contract. *Id.* at 16. KBR counters that its counterclaim alleges specific facts indicating that Army officials conceded that the Army had breached its force protection obligation. Def.'s Opp'n [69] 23.

The Court finds that KBR's counterclaim fails to allege facts that would show a breach of

11

the specific standard set out in the contract, which obligates the Army to provide, not "adequate" force protection generally speaking, but "force protection to contractor employees commensurate with that given to Service/Agency (e.g., Army, Navy, Air Force, Marine, DLA) civilians in the operations area unless otherwise stated in each task order." Compl. [1] ¶21 (quoting Clause H-16 of the LOGCAP III contract). KBR's allegations regarding the "adequacy" of the military's force protection, including alleged statements by military officials opining that the government wasn't living up to its contractual obligation, do not by themselves suggest a violation of Clause H-16, absent specific allegations that KBR and its subcontractors did not receive the level of force protection set out in LOGCAP III—namely, force protection "commensurate" with that given by the military to other Department of Defense civilians in Iraq. KBR's allegations would be sufficient if they contained facts suggesting that Department of Defense civilians were provided with a level of military force protection that was not commensurate with that provided to KBR, but its Answer contains no such allegations. Accordingly, KBR has not presented a plausible claim for recoupment based on breach of contract, and the Court will dismiss KBR's counterclaim on this independent basis.

### E. KBR's First Affirmative Defense Is Legally Deficient.

The Court also finds that KBR's first affirmative defense of material breach—based upon the government's alleged failure to fulfill the force protection obligation in the contract—must be struck, since the defense is precluded by the parties' contract.

Under the doctrine of prior material breach, a party may defend against a breach of contract claim on the ground that its performance was excused by the other party's prior breach of the contract. *See Long Island Bank, FSB v. U.S.*, 503 F.3d 1234, 1251 (Fed. Cir. 2007). However, in the government's Motion, it argues that this defense fails as a matter of law because

the LOGCAP III contract obligates KBR to continue performance "irrespective of any governmental breach." Pl.'s Mem. [61] 18.  The government points to a regulation, which LOGCAP III incorporates, that requires KBR to "proceed diligently with performance . . . , pending final resolution of any request for relief, claim, appeal, or action arising under the contract . . . ." *Id.* at 20 (citing Pl.'s Ex. 6 [61-6] 39 and 48 C.F.R. § 52.233-1).  Therefore, the government asserts, KBR's defense is legally deficient because, under the LOGCAP III, any alleged breach by the government could not excuse KBR's performance of its obligation to not use private armed security or permit its subcontractors to do so.  *Id.* at 20.

As noted by the government, Pl.'s Reply [71] 21, KBR fails to address this independent basis for striking its first affirmative defense, and so that argument is deemed conceded.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that a court may treat as conceded any arguments raised in a dispositive motion that the plaintiff fails to address in its opposition).  Therefore, pursuant to Federal Rule of Civil Procedure 12(f), the Court will strike KBR's first affirmative defense of material breach.

### III. CONCLUSION

For the reasons stated above, the Court will grant the government's Motion [61] to Dismiss KBR's Counterclaim and to Strike KBR's First Affirmative Defense.  Furthermore, the Court will order the parties to file, within fourteen (14) days of this date, motions addressing the appropriateness of a limited stay of the proceedings pending administrative exhaustion of KBR's September 29, 2011 certified claim and the filing of an amended answer that passes muster under Rule 12(b)(6).

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on April 23, 2012.