## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 10-cv-530 (RCL) |
| KELLOGG BROWN & ROOT SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Before the Court is defendant's Motion to Compel Discovery (Feb. 9, 2012) [ECF No. 75]. Upon consideration of the motion, the opposition and reply thereto, plaintiff's Cross-Motion for Protective Order [ECF No. 84], the opposition and reply thereto, and the record herein, the Court denies in part defendant's motion to compel. The Court is inclined to compel discovery on one issue, but will stay issuing an order in favor of giving the parties an opportunity to resolve the remaining discovery issues. To that end, the Court will order the parties to meet and confer to discuss the scope and schedule for additional discovery.

Resolving this motion will also moot defendant's Motion to Expedite Consideration (Feb. 9, 2012) [ECF No. 76], plaintiff's Cross-Motion for Briefing Schedule (Feb. 9, 2012) [ECF No. 78], and plaintiff's Cross-Motion for Protective Order (Mar. 5, 2012) [ECF No. 84].

## I.    BACKGROUND

This case concerns a contract dispute between plaintiff United States and defendant KBR, Inc. (formerly doing business as "Kellogg Brown & Root Services, Inc."). In 2001, at the

beginning of American military action in Iraq, the United States awarded a large logistical services contract to KBR, known as "LOGCAP III."   Under LOGCAP III, KBR provided various services—such as providing food—to American troops stationed in Iraq.   In executing LOGCAP III, KBR and its subcontractors allegedly hired armed private security companies ("PSC") to afford additional protection.   The United States contends that KBR then passed on the costs of these PSCs to the United States by including those charges in its invoices.   The Government[1] claims, under the terms of LOGCAPP III, that KBR could not pass on these costs. *See* Compl. (Apr. 1, 2010) at ¶¶ 7–12.   The United States argues that the contract stipulates that all force protection be provided by the U.S. Military, LOGCAPP III, ¶ H-16 at 98, and that KBR could not arm any of its personnel without seeking the permission of Theater Commander.   *Id*. at ¶ H-21, at 101.[2]

In February 2007, the United States informed KBR that it would not reimburse $19.6 million in charges relating to the use of PSCs by one of KBR's subcontractors.   The United States claims it subsequently discovered over $100 million in similarly disallowed PSC charges. KBR challenged this denial by filing a certified claim under the Contract Disputes Act ("CDA").[3]   Since the contracting officer did not issue an opinion within the allotted time, KBR's claim was a "deemed denial."   KBR appealed this denial to the Armed Services Board of Contract Appeals ("ASBCA").   *See* Def.'s Mot. to Dismiss Pl.'s Compl. (June 8, 2010) at 11–13.

---

[1] Following the convention established by the parties in their briefs, the Court will refer to the plaintiff as "United States" and "the Government" interchangeably.

[2] The Court discussed the factual background of this case in more detail in an earlier opinion, at *U.S. v. Kellogg Brown & Root Servs., Inc.,* 800 F. Supp. 2d 143, 146–47 (D.D.C. 2011).

[3] The Contract Disputes Act, 41 U.S.C. §§ 601–613 (2006), provides contractors procedures and rights for resolving contract disputes against the federal government.   For claims over $100,000, a contractor submits a claim in writing to a federal contracting officer.   41 U.S.C. at §§ 601(a),(c).   The contracting officer must act on the claim within 60 days, *id*. § 601(c)(2), and the contractor has the right to appeal the decision of the officer to the applicable agency's board of contract appeals.   *Id*. § 606.

While KBR's ASBCA appeal was pending, the United States brought suit in this Court on April 1, 2010. In its complaint, the Government alleged a violation of the False Claims Act, breach of contract, unjust enrichment, and payment by mistake. Compl. (Apr. 1, 2010) at ¶¶ 33–43. In August 2011, this Court dismissed the unjust enrichment and payment by mistake causes of action, but did not dismiss the False Claims Act or breach of contract claims. *U.S. v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 161 (D.D.C. 2011).

On August 17, 2011, KBR filed notice of a counterclaim against the United States. KBR requested recoupment from the United States "arising out of the Government's failure to provide the requisite force protection, in breach of the Government's obligations under LOGCAP III." Def.'s Answer to Pl.'s Compl. (Aug. 17, 2011) at ¶ 84. The United States moved to dismiss KBR's counterclaim, and on April 23, 2012 this Court granted plaintiff's motion on the basis that KBR had not exhausted administrative remedies available under the CDA and KBR's counterclaim failed to allege facts showing entitlement to relief. *U.S. v. Kellogg Brown & Root Servs., Inc*, 2012 WL 1382986, *5–*7 (D.D.C. Apr. 23, 2012).

In the meantime, ASBCA ruled on KBR's appeal. On April 2, 2012, the Board issued a ruling denying both parties' motions for summary judgment and finding that LOGCAP III's force protection clause did not categorically prohibit KBR or its subsidiaries from hiring supplemental security—in the form of PSCs—to assist in the execution of the agreement. *Kellogg Brown & Root Services, Inc*, ASBCA No. 56358, 12-1 BCA ¶ 35,001 at 12. The United States asked the Board to reconsider, and the Board reaffirmed its ruling on June 22, 2012. *See* Ex. to Notice of Filing of ASBCA's Decision on Army's Mot. for Recons. (June 27, 2012).[4]

---

[4] Before the Court is a Motion for Summary Judgment on Contract Interpretation filed by the United States on August 9, 2012 [ECF No. 107]. The parties agreed to a briefing schedule for the response and reply; the motion should be fully briefed by October 15, 2012. Order Grant. Mot. for

Before the Court are several related motions.  The primary motion is KBR's Motion to Compel [75], in which KBR claims that despite its attempts to meet and confer with the United States, the United States has refused to produce relevant information and fully answer interrogatories.  The United States, in its opposition [83] and cross-motion for protective order [84], argues that the information KBR seeks is irrelevant and not discoverable under Rule 26(b).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party….For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  The Rule notes that "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  *Id*.  The Rules limit discovery when:

> [T]he discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the burden or expense of the proposed discovery outweighs its likely benefit[.]

F.R.C.P. 26(b)(2)(C) (formatting omitted).  Parties may seek discovery by submitting document production requests—seeking the production of tangible things as under Rule 26(b)(1)—or through submitting interrogatories to the other party.  Federal Rule 33 allows a party to "serve on any other party no more than 25 written interrogatories" and the interrogatories may "relate to any matter that may be inquired into under Rule 26(b)."  F.R.C.P. 33(a).

---

Extension of Time (Aug. 24, 2012) [ECF No. 112].  The Court will give the parties an opportunity to brief how the ASBCA's ruling affects the present action before making a ruling on the subject.

When the parties are unable to resolve a discovery dispute, a party may file a motion to compel the opposing party to produce evidence or respond to interrogatories.   Under Federal Rule 37, a party may "move for an order compelling disclosure or discovery" only after the "movant has in good faith conferred or attempted to confer with the person or party."  F.R.C.P. 37(a)(1).   Courts have held that conferring with the opposing party is a prerequisite to any successful Rule 37 motion to compel.  *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 529–30 (D.D.C. 2006) (Lamberth, J.) (denying motion to compel for failure to meet and confer prior to filing).   When the opposing party has answered the movant's interrogatories, the party moving to compel discovery has the burden of showing that the opposing party's responses are incomplete.  *Guantanamera Cigar Co. v. Corporation Habanos, S.A.*, 263 F.R.D. 1, 7 (D.D.C. 2009) (Lamberth, C.J.).   When the opposing party refuses to respond to a discovery request, the burden shifts to the opposing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery.  *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59–60 (D.D.C. 1984).

When considering whether to grant a motion to compel, a court must consider whether the "discovery appears reasonably calculated to lead to the discovery of admissible evidence," F.R.C.P. 26(b)(1), and whether the request falls under any of the limitations listed in Rule 26(b)(2)(C).  The court must also consider the prior efforts of the parties to resolve the discovery dispute without court intervention.   F.R.C.P. 37(a)(1); *Pogue*, 235 F.R.D. at 529–30.   An appellate court will reverse a grant or denial of a motion to compel only if it finds that the district court abused its discretion.  *Libscomb v. Winter*, 2009 WL 1153442, *1 (D.C. Cir Apr. 3, 2009) (affirming district court because "appellant has not shown the district court abused its discretion in denying his motion to compel discovery.") (citing *U.S. v Microsoft Corp.*, 253 F.3d 34, 100

(D.C. Cir. 2001) ("[T]he trial court [has] wide latitude to receive evidence as it sees fit.")).  As

noted by the D.C. Circuit, "Trial courts exercise considerable discretion in handling discovery

matters[.]"  *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F. 3d

1007, 1012 (D.C. Cir. 1997).

## III.   DISCUSSION

In its motion to compel, KBR identifies three categories of information that the

"Government unilaterally refuses to provide":

> First, the Government refuses to identify which claims submitted by KBR are
> allegedly false, and will not specify which invoices it contends contain allegedly
> prohibited armed private security charges.

> Second, the government refuses to provide documents or information related to
> the Army's providing (or, as KBR alleges, failure to provide) force protection to
> contractors in Iraq.

> Third, the Government refuses to provide documents and information relating to
> its contracts and interactions with other prime contractors in Iraq that relate to
> armed private security.

Def.'s Mem. ISO its Mot. to Compel (Feb. 9, 2012) at 1 (formatting omitted).  The United States

responds with a Cross-Motion for a Protective Order, Or in the Alternative, To Compel and Stay.

In this cross-motion, the United States requests that the Court issue an "order protecting the

Government from KBR's attempts to obtain unduly burdensome discovery of two issues

irrelevant to this litigation: force protection and contracts other than the LOGCAP III contract;

and to relieve the United States of the burden to comb through KBR's own invoices and derive

an answer to KBR's interrogatory that KBR itself can just as easily obtain."  Pl.'s Cross-Mot. for

Protective Order (Mar. 5, 2012) at 1.  If the Court does not issue such a protective order, the

Government asks the Court to "compel KBR itself to identify which of its own invoices contain

private armed security costs and stay discovery on force protection issues until the Government's pending dispositive motion [on KBR's counterclaim] is resolved." *Id.*

For the reasons set forth below, the Court finds that KBR is entitled to discovery for some of the matters in the second category, but not for any in the first and third. Although the parties' prior efforts to compromise have failed, the Court hopes that with the guidance offered by this opinion, the parties can reach a mutually agreeable solution. Therefore, the Court will order the parties to meet and confer within seven (7) days and discuss how to proceed with discovery. Within thirty (30) days, the parties shall apprise the Court of their efforts, including, if possible, the compromises reached by the parties and an agreed-upon timetable for accomplishing the additional discovery. If the parties cannot agree—and granting additional time would likely be futile—the Court shall enter its own order compelling and setting the schedule for additional discovery. Furthermore, the Court finds its resolution of KBR's motion to compel moots the United States' cross-motion for protective order, as well as other motions concerning the briefing and decision schedule of the motion to compel.

### A.   KBR's Interrogatory Requesting Identification of Claims Submitted by KBR Containing Allegedly Unallowable or Fraudulent Charges

KBR alleges that the Government has refused to provide information about which claims submitted by KBR contain unallowable PSC costs. In its first amended set of interrogatories, KBR submitted:

INTERROGATORY NO. 1

Identify by number, date, and amount all invoiced that KBR submitted to the Government for payment under LOGCAP III that allegedly contained prohibited costs for PSCs, the amount of those invoices paid by the Government and the date payments were made, the amount of the allegedly prohibited costs, and the amount of those invoices, if any, the Government has refused to pay or withheld and the date on which refusal or withholding was made.

Def.'s First Am. Interrogs. (Oct. 31, 2011) at 8.  The United States responded:

> The United States objects to the Interrogatory on the grounds stated in the General Objections and on the grounds that the information sought by this Interrogatory is already in the possession, custody, and control of KBR.

> Subject to, and without waiving these objections, the United States responds by referring KBR to the invoices it submitted to the Army under LOGCAP III in which KBR billed the Army (either on a direct or indirect basis) amounts for: (i) the four employees under the command and control of the KBR Middle East Regional Office as described in KBR's April 17, 2007, submission to ASC; (ii) the three firms (CTU, Triple Canopy, and Omega Risk Solutions) KBR used to provide movement protection and other security services to KBR personnel in the Middle East as described in KBR's April 17, 2007, submission to ASC; (iii) ESS's LOGCAP III subcontracts; (iv) LOGCAP III subcontracts with the firms listed in the Government's First Set of Requests for the Production of Documents at Request No. 28; and (v) any other LOGCAP III subcontractor identified by KBR in its May 30, 2007, Addendum to May 1st Submittal chart entitled Armed Private Force Protection Summary provided to ASC. The Government further directs KBR to the Form 1, Notices of Contract Costs Suspended and/or Disapproved of February 7, 2007, and August 4, 2009, and the Government Assessment of KBR Private Security Costs provided to KBR on or about February 4, 2009, for the amounts, descriptions, and other details of the costs questioned by the Government in this action.  The Government further directs KBR to the Contract Disputes Act ("CDA") claims it has submitted to ASC challenging ASC's withholdings of certain payments for descriptions of payments withheld by the Army incident to its suspension and disapproval of costs associated with unauthorized private armed security.

Pl.'s Resp. to Def.'s First Am. Interrogs. (Dec. 9, 2011) at 10–11.  KBR claims the Government's response "does not shed any light on which invoices are at issue."  Def.'s Mem. ISO its Mot. to Compel at 9.  The United States counters that its response "identifie[s] with sufficient detail the records that KBR could review to ascertain the invoices at issue in this case."  Pl.'s Mem. ISO its Opp'n to Def.'s Mot. to Compel (Mar. 5, 2012) at 34.

If the United States simply refused to answer the interrogatory, the burden would be on the United States explain why KBR's request is burdensome, overly broad, vague or outside the scope of discovery.  *Chubb*, 103 F.R.D. at 59–60.  However, the United States has provided an answer—one that may be acceptable under Rule 33(d) as discussed *infra*.  Since the Government

answered, the burden shifts to KBR to show that the Government's responses are incomplete. *Guantanamera*, 263 F.R.D. at 7.  KBR has not overcome its burden to show that the United States' response is incomplete.  The United States' response complies with Rule 33(d), and is therefore an acceptable answer to Interrogatory 1.

Federal Rule of Civil Procedure 33(d) allows a party to answer an interrogatory through the production of business records.  The Rule reads in pertinent part:

> Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting or summarizing a party's business records…, and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1)    specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2)    giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

F.R.C.P. 33(d).  Compliance with Rule 33(d) can serve as a proper ground for dismissing a motion to compel.  *Pederson v. Preston*, 250 F.R.D. 61, 65 (D.D.C. 2008) (Lamberth, C.J.).

As the Advisory Committee noted, Rule 33(d) relates "especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer.  The subdivision gives the party an option to make the records available and place the burden of research on the party who seeks the information."  Advisory Committee's Notes to 1970 Amendment of F.R.C.P. 33.  The documents in question are invoices KBR submitted to the United States; as such, the relevant documents could be considered *both parties'* business records.  In addition to having the invoices within its own business records, KBR has requested from the United States all "[d]ocuments (including, but not limited to, the invoices themselves) sufficient to identify all LOGCAP III Contract invoices that the

Government contends contain prohibited costs for private security contractors, including any indirect costs." Def.'s First Am. Req. for Prodc. of Docs. (Oct. 31, 2011) at 10 (Request for Production No. 3). KBR has not complained that the Government has ignored this request. Between its own files and the documents the Government has produced pursuant to Request 3, KBR should have everything it needs to locate the invoices at issue. Although Interrogatory 1 requests relevant information and the United States may not brush it off, the United States is not required—through interrogatory response—to do KBR's document review.

KBR should realize that the answer to its interrogatory can be determined by examining the parties' business records. As KBR noted, in responding to a similar interrogatory from the United States, "the answer to this interrogatory [requesting KBR to identify invoices containing private security costs] may be determined, at least in part, by examining the parties' business records that have either already been produced and/or will be produced[.]" Def.'s Objs. & Answers to Pl.'s First Set of Interrogs. (Dec. 9, 2011) at 6. Similarly, KBR may find the answer to Interrogatory 1 within either its own files or the files the United States has produced pursuant to KBR's Request for Production No. 3. Def.'s First Am. Req. for Prodc. of Docs. at 10 (quoted *supra*). In Request 3, KBR basically requests the documents that would answer Interrogatory 1. Now KBR asks the United States to sift through what it has produced in response to Request 3 and pick out the key documents. KBR can do this on its own, just as easily.

Rule 33(d) requires that that the responding party "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]" Through its interrogatory response, the Government has specified the records in sufficient detail to enable KBR to locate and identify them. The Government has identified the subject matter and timeframe of the contested invoices. The

Government's answer refers to other documents, already in KBR's possession, that describes the relevant invoices in greater detail. Through standard document review procedures, KBR can identify the invoices.

Rule 33(d) also requires that the "burden of deriving or ascertaining the answer will be substantially the same for either party" and that the information the Government provided enables KBR to locate and identify the records "as readily as the responding party could[.]" The "[r]elevant factors in the burden analysis are: (1) the cost of the necessary research, (2) the nature of the relevant records, and (3) the interrogated party's familiarity with its own records." *Handi-Craft Co. v. Action Trading S.A.*, 2004 WL 6043510, *5 (E.D. Mo. 2004) (denying motion to compel based on compliance with Rule 33(d)) (citing *T.N. Taube Corp. v. Marine Highland Mortgage Corp.*, 136 F.R.D. 449, 454 (W.D.N.C. 1991)). KBR may argue that the Government, as plaintiff, more readily knows which invoices contain disputed PSC costs—after all, since the Government claims fraud, it should know where the alleged fraud is. Presumably, the Government has already reviewed invoices and has identified several that contain disputed charges. The burden on the Government simply to list what it has already identified should be less than the burden on KBR to trudge through the documents and identify the relevant invoices.

That would be the wrong way for the Court to measure burden. The Court should weigh the efforts and costs the Government has *already expended* ascertaining the answer[5] against what it would take KBR to do the same. To do otherwise could reward KBR's delay in reviewing the directed-to materials and allow KBR to piggyback on the United States' work product. Applying the "considerable discretion" that "trial courts exercise…in handling discovery matters," *Food*

---

[5] To the extent the Government already has ascertained the answer. The Government, through discovery, may continue to find allegedly fraudulent charges and uncover new instances of disputed PSC charges. A plaintiff is not required, at the pleading stage, to have all the information it would need to proceed directly to trial. The plaintiff is not estopped from alleging new instances of fraud and overcharging based on its ongoing document review efforts.

*Lion*, 103 F.3d at 1012, this Court declines to reward an approach would invite the parties to drag their feet in discovery, waiting for the other party to review the business records until the "burdens" have shifted in their favor.

Instead, the Court looks at the burden question from an *ex ante* perspective and finds the burden of ascertaining the answer would be substantially the same for either party. The United States gave KBR sufficient notice of which invoices may contain disputed charges. The relevant files are completely open to KBR's review. KBR should be familiar with the relevant business records and know how to search through them. Most, if not all, of the invoices at issue were already in KBR's possession prior to litigation, and the United States will produce those that are not. KBR might argue that since the United States is the plaintiff, it knows better which invoices contain allegedly fraudulent charges. However, whether the PSC charges are *disallowed* or *fraudulent* is for a court (or administrative body) to decide. KBR knows that any invoices with PSC charges are in dispute. As the party—allegedly—contracting with PSCs and hiring subcontractors using PSCs, KBR knows how to search for these invoices to the extent they exist. The United States does not have special knowledge that would necessarily make it easier to find these invoices. The Court finds that the burden for ascertaining the answer is substantially the same for either party, and the United States has complied with Rule 33(d) by directing KBR to a set of business records from which KBR can derive the answer to its interrogatory.

KBR argues that "discovery is necessary because the Government bases its claim on the flawed [2007 Defense Contract Audit Agency] audit….The Government's discovery responses point to the audit and its supporting documents as the basis for its FCA claim. Yet the audit's numerous and pervasive defects render it unusable for KBR to determine what alleged PSC charges are truly at issue[.]" Def.'s Mem. ISO its Mot. to Compel at 10. Whatever flaws the

2007 audit may have, this does not require additional discovery.  First, the Government points to more than just the 2007 audit.  It also describes the nature of the disputed PSC charges (i.e., naming three firms that allegedly provided PSC services to KBR).  Pl.'s Resp. to Def.'s First Am. Interrogs. at 10–11.  The Government directs KBR to a 2009 Notice of Contract Costs Suspended and/or Disapproved, a 2009 Government Assessment of KBR Private Security Costs provided to KBR, and the filings of the parties pursuant to the CDA administrative action.  *Id*. These documents describe the invoices in sufficient detail to enable KBR to locate them within the provided business records.  Even if the 2007 audit is flawed, and includes instances where subcontractors hired PSCs but did not pass on costs to KBR, additional discovery is not the remedy.  The United States responded to Interrogatory 1 based on its assessment of what invoices contain impermissible charges.  KBR argues that many of the invoices discussed in the 2007 audit do not, in fact, contain impermissible charges.  Either way, the Court does not believe that the United States directed KBR to the 2007 audit as a red herring, to distract KBR from finding the "real" invoices at issue.  Insofar as the parties have a dispute over the methods used in the 2007 audit, this is not a discovery issue.

The Court understands that KBR wants a list of which charges are at issue so it can prepare its defense.  *See* Def.'s Mem. ISO its Mot. to Compel at 10.  Nevertheless, the United States gave an adequate Rule 33(d) response to KBR's interrogatory.  This Court has already found that the United States has pled its False Claims Act claim with sufficient detail to meet the heightened standard for fraud claims.  *KBR*, 800 F. Supp. 2d at 153–54.  There has been parallel action, under the CDA, where presumably the United States has pled and discussed its claims in more detail.  If the Government never specifies the challenged invoices, then the Court could dispose of the case by summary judgment.  If the Government relies on documents not produced

to KBR under Request 3, then sanctions for an abuse of the discovery process could be appropriate.[6]  The Government has complied with the Rules and satisfactorily answered KBR's interrogatory.  No motion to compel is warranted.

### B.     KBR's Request for Documents Relating to Force Protection

KBR has also requested documents relating to the force protection provided to KBR by the Government, as required under LOGCAP III.  In its first amended request for documents, KBR submitted:

> REQUEST FOR PRODUCTION NO. 9
>
> All documents that refer or relate to the Government's contractual obligation to provide force protection to KBR, including all documents related to any failure to provide force protection to KBR and/or any of the companies who performed as LOGCAP III subcontractors in Iraq.
>
> REQUEST FOR PRODUCTION NO. 10
>
> All communication between KBR and the Government concerning requests by KBR and/or any of the companies who performed as LOGCAP III subcontractors for the Government to provide force protection or concerns expressed by KBR and/or any of the companies who performed as LOGCAP III subcontractors about the Government's provision of force protection.

Def.'s First Am. Req. for Prodc. of Docs. at 12.  KBR also made other, significantly wider requests for documents relating to force protection in Requests 8, 27, 29, 35, 36, 37, 39, 40, 42–46.[7]  For example, KBR submitted:

> REQUEST FOR PRODUCTION NO. 8
>
> All documents related to any Government contracts concerning military support services in Iraq and Afghanistan where the Government agreed to provide force

---

[6] Including, if warranted, not allowing the United States to introduce or rely on invoices that should have been produced pursuant to Request 3.  *See* F.R.C.P. 37(b)(2)(A)(ii) (allowing Court, as an appropriate discovery sanction, to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence").

[7] These are the Requests that KBR mentioned, in its motion to compel, as containing requests for force protection information.  Def.'s Mem. ISO its Mot. to Compel at 15 n.5.

protection to contractor and/or subcontractor personnel, including but not limited to all documents related to the Government's responsibility for providing force protection to KBR, its employees and subcontractors and related to evaluations or criticisms of the Government's performance of this responsibility.

*Id.*  KBR argues that this information is relevant to its defenses and its (then-pending) counterclaim.  Def.'s Mem. ISO its Mot. to Compel at 16–21.  The United States responded to Requests 9 and 10 with:

> The United States objects to the Request on the grounds stated in its General Objections and Summary and specifically on the grounds that the Interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Indeed, as set forth in the Summary and the Government's MTD KBR's Counterclaim, the nature and scope of the Government's force protection is irrelevant to this matter.  This case concerns KBR's uses of and billings for unauthorized private armed security and its knowledge of the proscriptions on such uses set forth in LOGCAP III and other applicable authorities.  The scope and nature of the Government's force protection provides no justification for KBR's fraud.
>
> Subject to, and without waiving, these objections, the Government has produced and will produce non-privileged documents responsive to this Request to the extent they are identified through its Reasonable Search and Production Efforts.

Pl.'s Resp. to Def.'s First Am. & Second Req. for the Prodc. of Docs. (Dec. 9, 2011) at 31–32.

Furthermore, the United States made a general objection to the production of force protection documents:

> The Government objects to providing information regarding battlefield threat assessments and military force protection, including the collection of military intelligence, the assessment of that intelligence and potential battlefield risks, and the allocation of military resources to protect against potential risks….[T]he nature and scope of the Government's force protection is irrelevant to this matter. This case concerns KBR's uses of and billings for unauthorized private armed security and its knowledge of the proscriptions on such uses set forth in LOGCAP III and other applicable authorities.  The scope and nature of the Government's force protection provides no justification for KBR's fraud.  Consequently, the United States is neither specifically searching for nor intends to produce documents concerning the military's professional judgment regarding threat assessments and force protection.  Nonetheless, subject to, and without waiving this general limitation, to the extent DOD components have produced or do produce information regarding threat assessments and force protection in response

15

to KBR's FOIA requests, the Government refers to those documents as part of its response to the Requests.

*Id*. at 22–23.  The Government argues that the force protection documents are irrelevant.  Pl.'s Mem. ISO its Opp'n to Def.'s Mot. to Compel at 21–25.

This Court dismissed KBR's counterclaim relating to the Government's failure to provide force protection because KBR did not exhaust available administrative remedies.  *KBR*, 2012 WL 1382986, *5–*7.  KBR argues that, even if the Court were to dismiss its counterclaim, it still needs documents related to force protection to defend the United States' False Claims Act and breach of contract causes of action.  Def.'s Mem. ISO its Mot. to Compel at 19–20.  The United States argues that the Court should dismiss KBR's counterclaim, and in any event force protection issues are irrelevant to whether LOGCAP III allowed PSC charges.  Pl.'s Mem. ISO its Opp'n to Def.'s Mot. to Compel at 8–9, 22–26.  This Court decides that, despite dismissing KBR's counterclaim, the force protection documents may still be relevant to KBR's defenses. They could be relevant to whether it was reasonable for KBR to bill the United States for supplemental private security under the terms of the agreement.  The Court, however, would limit any discovery on force protection to the United States' obligation under LOGCAP III to protect KBR and its subcontractors.  The Court will not compel discovery about force protection issues outside of LOGCAP III, as these issues are too remote to overcome the great burden production would put on the United States.

In the event "the relevance of the documents…is not self-evident from the request," KBR "must first demonstrate [their] relevance…[i]n order to compel production."  *Alexander v. FBI*, 194 F.R.D. 299, 304 (D.D.C. 2000) (Lamberth, J.).  If relevance is established and a party refuses a discovery request, the burden is on the refusing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery.  *Chubb*, 103 F.R.D. at 59–

60.  Here, the United States has effectively refused to produce.  The United States stated that it "is neither specifically searching for nor intends to produce documents concerning the military's professional judgment regarding threat assessments and force protection."  Pl.'s Resp. to Def.'s First Am. & Second Req. for the Prodc. of Docs. at 22.  Instead of producing documents without waiving its objections, the United States simply refers KBR to whatever it may have produced on the matter "in response to KBR's FOIA requests."[8]  *Id*.  Thus, the burden is on the Government to explain their refusal to produce relevant information.

Under Rule 26(b), parties are entitled to discovery on any matter, not privileged, relating to claim or defense.  As this Court has noted in a prior case, "The scope of discovery itself is broad….The term relevance at the discovery stage is broadly construed and is given very liberal treatment."  *Tequilla Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 6 (D.D.C. 2007) (Lamberth, J.).  A party is entitled to discovery on matters "reasonably calculated to lead to the discovery of admissible evidence," even if the information sought ultimately would not be admissible at trial.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–52 (1978).  Although it is proper to deny discovery on matters only relevant to claims or defenses that have been stricken, a party may still discover information otherwise relevant to the remaining issues.  *Tequilla Centinela*, 242 F.R.D. at 6–8 (citing *Oppenheimer*, 437 U.S. at 352).

Since KBR filed this Motion to Compel, two major things have occurred:  this Court struck KBR's counterclaim and the ASBCA issued an opinion favorable to KBR.  Some of KBR's force protection requests survive the dismissal of its counterclaim because those requests could be relevant to KBR's defense.  On April 2, 2012, the Armed Services Board of Contract

---

[8] If the United States has already produced certain information under FOIA requests, then they could argue that reproducing this information would be duplicative and wasteful.  However, the Court does not read the Government's answer as suggesting that the FOIA requests provided *all* the relevant force protection documents.  To the extent there are additional, responsive force protection documents not within the FOIA productions, the Government has refused discovery on this issue.

Appeals, in denying both parties' motions for summary judgment, held that LOGCAP III had "no categorical prohibition…on the use of armed security companies, without the express permission of the Theater Commander, to supplement force protection where necessary to accomplish the logistical support mission." *Kellogg Brown & Root Services, Inc*, ASBCA No. 56358, 12-1 BCA ¶ 35,001 at 12.  The United States moved for reconsideration, and on June 22, 2012 the ASBCA reaffirmed its April 2 decision.  *See* Ex. to Notice of Filing of ASBCA's Decision on Army's Mot. for Recons. (June 27, 2012).

The Court pauses to reiterate that it has yet to decide whether to dismiss or stay the present action based on the findings of the ASBCA.  It has not decided what level of deference, if any, to give to the factual and legal findings of the ASBCA.  The Court has invited briefing on the issue, and will give the parties an opportunity to be heard before ruling.  Today, the Court focuses on the ASBCA ruling for a different purpose: to show the possible relevance of force protection to KBR's defense.

If there is no categorical prohibition on the use of PSCs to supplement force protection where necessary, then whether it was reasonable for KBR to bill the United States for supplemental security may hinge on whether the United States was meeting its force protection obligations.  Put another way, if the United States was adequately protecting KBR employees and subcontractors, and KBR did not need private security, then KBR could be passing on costs not necessary to perform on the contract.  Therefore, whether PSCs were necessary could be key to KBR's breach of contract defense.

As noted above, pre-trial discovery is broad and courts should read "relevance" liberally. The Court should not split hairs about which defenses it thinks it or a jury would ultimately find convincing.  The standard is whether the request is "reasonably calculated to lead to the

discovery of admissible evidence." *Oppenheimer*, 437 U.S. at 350. KBR's Requests for Production 9 and 10, reproduced *supra*, meet that standard.[9] Def.'s First Am. Req. for Prodc. of Docs. at 12. The ASBCA's interpretation of LOGCAP III suggests that KBR might have a plausible defense hinging on the level of force protection provided by the Government. To the extent that the Government is concerned about the burden of producing force protection documents or revealing sensitive national security information, KBR has expressed a willingness to compromise and narrow its requests. *See* Def.'s Reply ISO its Mot. to Compel (Mar. 13, 2012) at 5–6. The Court hopes that this Memorandum Opinion sufficiently focuses the remaining discovery disputes so the parties may reach a mutual agreement.

However, this Court does not think discovery is appropriate for force protection matters beyond the scope of LOGCAP III. For example, Request No. 8 asks for "[a]ll documents related to any Government contracts concerning military support services in Iraq and Afghanistan where the Government agreed to provide force protection to contractor and/or subcontractor personnel[.]" Def.'s First Am. Req. for Prodc. of Docs. at 12. Request No. 46 asks for "[a]ll documents representing the planning for and execution of force protection for contracting parties and others in Iraq dated from six months before the start of the engagement to present[.]" *Id.* at 24. The relevance of this information is not self-evident, and the Court finds that KBR has failed in its efforts to convince the Court that they are relevant.

This is a contract dispute between the United States and KBR about one particular agreement. Information regarding the United States' general force protection efforts in Iraq, or

---

[9] With one clarification as to scope. Request 9 asks for "All documents that refer or relate to the Government's contractual obligation to provide force protection to KBR." Def.'s First Am. Req. for Prodc. of Docs. at 12. The Court would like to make sure this is limited to the Government's "contractual obligation *under LOGCAP III* to provide force protection." The Court is reluctant to allow discovery on force protection issues related to other contracts.

its efforts to protect parties other than KBR under contracts other than LOGCAP III are only tenuously related to the issues in this case.  Even if there is some relevance, its value is vastly outweighed by the enormous expense and burden that producing this information would place on the United States.  KBR should not be allowed to engage in a fishing expedition, requiring the United States to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence.[10]

This Court wants to give the parties a chance to resolve this issue themselves.  Rather than issue an order with details and a timetable that might not best serve the parties, the Court orders the parties to meet and confer within seven (7) days to discuss the scope and scheduele for additional discovery on the force protection issue.  The parties are best situated to strike the correct balance between KBR's right to discovery and the United States' concerns about burdens, costs, and the possibility of disclosing sensitive national security information.  Within thirty (30) days, the parties must apprise the Court of their efforts.  If the parties have come to a compromise, they should inform the Court of its details and submit a joint order scheduling the additional discovery.  If the parties cannot agree within thirty (30) days, the Court may grant additional time if the Court believes a compromise is possible.  If the parties are at a standstill, the Court will enter its own order compelling the production of evidence.

**C.    KRB's Request for Documents Relating to Non-LOGCAP III Contracts Containing Force Protection Provisions**

KBR has also requested documents relating to other Government contracts containing provisions for private security.  An example of such a request is KBR's Request for Production No. 8, also discussed in the previous section:

---

[10] The Court's more detailed discussion, in Part III.C *infra*, of its hesitance to compel discovery on matters beyond the scope of the LOGCAP III contract pertains here.

REQUEST FOR PRODUCTION NO. 8

> All documents related to any Government contracts concerning military support services in Iraq and Afghanistan where the Government agreed to provide force protection to contractor and/or subcontractor personnel, including but not limited to all documents related to the Government's responsibility for providing force protection to KBR, its employees and subcontractors and related to evaluations or criticisms of the Government's performance of this responsibility.

Def.'s First Am. Req. for Prodc. of Docs. at 12.  To this and similar requests,[11] the Government responded:

> The Government objects to providing information regarding other contracts or its interactions with other contractors.  The Government's claims in this action do not concern other contracts, but rather are focused on KBR's LOGCAP III contract with the Army and KBR's wrongful acts of billing amounts to the Army under that contract for services prohibited by the contract -- unauthorized private armed security.  KBR does not allege, because it cannot, that it is similarly situated to any other contractor as KBR's LOGCAP III contract is not comparable to any other contract entered into by the military in support of its mission in Iraq. Consequently, the United States is neither specifically searching for nor intends to produce documents concerning other contracts or the Government's interactions with other contractors as part of its direct responses to the Requests in this action. Nonetheless, subject to, and without waiving this general limitation, to the extent DOD components have produced or do produce information regarding other contractors in response to KBR's FOIA requests, the Government refers to those documents as part of its response to the Requests.

Pl.'s Resp. to Def.'s First Am. & Second Req. for the Prodc. of Docs. at 22.

As this Court has stated:  "In order to compel the production of documents, the requesting party must first demonstrate the relevance of the documents if it is not self-evident from the request." *Alexander*, 194 F.R.D. at 304.  The Government has effectively refused to produce any

---

[11] Unlike with the force protection requests, KBR does not enumerate which requests fall under this category of information.  The United States' "request for a protective order regarding other contracts discovery includes…: (i) requests made in KBR's Amended Requests including Request No. 17(a)…; (ii) Interrogatory Nos. 7-9, and 12 in KBR's First Amended Interrogatories…; (iii) Interrogatory No. 14 in KBR's Second Interrogatories…; (iv) topics 6-8, 12(b), 12(d), 16 of KBR's Rule 30(b)(6) Notice…; (v) KBR's Third Set of Requests for the Production of Documents…; and (vi) the Deposition Notices of Cheryl Hodge-Snead and Mary Robertson."  Pl.'s Mem. ISO its Opp'n to Pl.'s Mot. to Compel at 26–27 n.17.  The Court does not necessarily agree with the United States' characterization of what requests relate to "other contracts" and would like to parties to discuss this as they meet and confer.

documents, so if KBR establishes relevancy, the burden would be on the United States to show why the request falls afoul of the rules. *Chubb*, 103 F.R.D. at 59–60. KBR is entitled to discovery on any matter "reasonably calculated to lead to the discovery of admissible evidence," *Oppenheimer*, 437 U.S. at 350, unless such discovery is burdensome, overly broad, vague or outside the scope of discovery. F.R.C.P. 26(b)(2)(C); *Chubb*, 103 F.R.D. at 59–60.

As noted previously, the Court does not see the relevance of documents relating to other contracts. Courts read "relevance" broadly for the purposes of discovery. *Food Lion*, 103 F.3d at 1012. That said, trial courts have broad discretion to handle discovery matters, *id.,* and may deny discovery if the requests fall under the exceptions enumerated in Rule 26(b)(2)(C). *See e.g., Harris v. Koenig*, 271 F.R.D. 356, 363 (D.D.C. 2010) ("A court is…bound by Rule 26(b)(2)(C)(iii), which requires it to limit discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"). As the Supreme Court stated, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Courts may deny motions to compel if they find that the information requested is irrelevant. *See Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005); *Friedman v. Bache Hasley Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (denying discovery for information with "no conceivable bearing on the case"); *see also Cobell v. Norton*, 226 F.R.D. 67, 81 (D.D.C. 2005) (Lamberth, J.) ("[T]he Court can only issue [orders to compel] where the information…is within the scope of discovery defined by Rule 26."). Courts test relevance by looking at the law and facts of the case, not simply the expressed desires of a party to see certain information. *Burlington*, 368 F. Supp. 2d at 87–89.

On several occasions, courts have denied discovery on issues that stray too far away from the core facts of the case.  In *Zelaya v. UNICCO Service Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010) (Lamberth, C.J.), a gender discrimination suit, the plaintiff requested information regarding instances of discrimination committed by supervisors of the defendant company who played no direct role in the plaintiff's case.  This Court questioned the relevance of this "other supervisor" evidence to plaintiff's case and did not grant the motion to compel.  *Zelaya*, 682 F. Supp. 2d at 32–33.  In *Cobell v. Norton*, 226 F.R.D. 67, this Court denied plaintiff's motion to compel to the extent it requested information beyond the scope of the claims presented in the case.  This Court stated that "the only relevant consideration for the purposes of Rule 26 is the *nature of the claims that the parties have asserted*."  *Id*. at 79 (emphasis in original).  In *Harris v. Koenig*, 271 F.R.D. at 368–69, the Court found that the defendant adequately responded to narrower document requests, and therefore the wider requests struck the Court as "seeking patently irrelevant information."

Courts also frequently deny discovery when the party requests voluminous discovery where only a small fraction of the produced documents may be relevant.  Courts often call such attempts "fishing expeditions."  The Tenth Circuit, in *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010), explained:

> Rule 26(b) will not permit unlimited discovery.  Rule 26(b)(1) permits discovery of only "[r]elevant information" and the discovery must "appear[] reasonably calculated to lead to the discovery of admissible evidence."  Moreover, all discovery is limited by Rule 26(b)(2), which protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests….Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.

619 F.3d at 1163.  In *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001), the First Circuit denied additional discovery and would "not allow [respondent]

to go on a 'fishing expedition' with the mere 'hope' that it will obtain [relevant] information."  In *MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 863 (D.C. Cir. 1988), the D.C. Circuit affirmed orders quashing subpoenas so as not to "authorize a fishing expedition into congressional files."  And in a case between the United States and KBR, regarding an alleged violation of the LOGCAP III contract, the Court of Federal Claims warned against the "use of discovery as a fishing expedition."  *Kellogg Brown & Root Servs., Inc. v. U.S.*, 99 Fed. Cl. 488, 495 (2011) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310 (Fed. Cir. 2011)).

In sum, although Courts should read "relevance" broadly, they should not endorse "'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests."  *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983).  Instead, Courts should tailor discovery "to the issues involved in the particular case."  *Id*.  This Court finds that the KBR's requests for documents relating to other contracts or other parties are not facially relevant to the case, and KBR has not met is burden in convincing the Court how the information is relevant.  Even if the Court concedes that these documents may be somewhat relevant, the burden and expense these far-reaching requests place on the United States substantially outweighs the documents' relevance and value.

KBR contends that it needs documents relating to non-LOGCAP III contracts because they are "relevant to the Government's interpretation of the contractual provisions at issue here….KBR is entitled to know whether there are instances in which the Government interprets the same or similar contractual language differently than its current interpretation of the relevant LOGCAP III provisions."  Def.'s Mem. ISO its Mot. to Compel at 22.  KBR then points to a contract it entered into with the Government, "Project RIO," that contained a similar force protection clause.  KBR contends that despite the similar language, "the Government not only

approved, but *actively encouraged* KBR to use armed private security during Project RIO." *Id.* at 22–23 (emphasis in original).  KBR asserts that these documents relate to KBR's ratification defense, the Government's proof of damages, and the reasonableness of the charges.  *Id.*

In opposition, the Government claims, as the largest Operation Iraqi Freedom contract, "LOGCAP III was unique, and thus, dissimilar to any other Government contract."  Pl.'s Mem. ISO its Opp'n to Def.'s Mot. to Compel at 28.  According to the United States, "given the size of the LOGCAP endeavor, the supervising contracting office was solely dedicated to LOGCAP matters, not other contracts."  *Id.*  The Government characterizes KBR's discovery requests as a "fishing expedition into interpretations of dissimilar contracts made by officials who played no role in supervising KBR's actions under LOGCAP III."  *Id.*  The Government responds to KBR's contentions about Project RIO by noting that "KBR sought consent from…Project RIO's contracting staff to use a private security company"; KBR sought no such consent to use PSCs under LOGCAP III.  *Id.* at 29.  Furthermore, as the United States argues, other contracts evidence is irrelevant to ratification or wavier defenses, which would depend on the course of performance of the LOGCAP III contract, not other agreements.  *Id.* at 29–30.

This Court, after considering the arguments and evidence, agrees with the United States that matters relating to non-LOGCAP III contracts are not sufficiently relevant to compel discovery.  KBR has not convinced the Court how and to what degree these other contracts are similar to LOGCAP III, other than that they have force protection clauses.  These contracts were made between different contracting officers and different private contractors, at different times for different purposes.  LOGCAP III is not a form agreement; it is a massive, unique undertaking.  KBR has not explained how the contracts are sufficiently similar to make the Government's interpretation of one binding on the other.

Even if the contracts are similar, there are problems.  KBR's production requests are wide-ranging and open-ended.  For example, KBR requests:

> All documents relating to any contracts entered by the Government for private security contractor services, or that permit subcontracting for private security contractor services….

> All documents that refer or relate to the Government's willingness or refusal to reimburse contractors for private security contractor services….

> All documents that refer or relate to whether the use of armed private security was permitted or prohibited by contract, rule of law, regulation or otherwise[.]

Def.'s First Am. Req. for Prodc. of Docs. at 15, 20 (Requests for Production 17(a), 17(d), 31).  The Court can only imagine the amount of effort required by the United States to collect, review, check for privilege, and produce this information.  The Court can only imagine how many different agencies and contracting officers would be involved in a search for all non-LOGCAP III force protection clauses.[12]  The burden and expense could be massive, and these productions are unlikely to yield much directly relevant information.  This is the definition of a fishing expedition that violates the limits on discovery required by Rule 26(b)(2)(C).

KBR claims that it is being singled out and treated differently—other contractors, subject to similar force protection clauses, have used PSCs without any complaint from the Government.  *See* Def.'s Reply ISO its Mot. to Compel at 15 ("The Government, however, has not withheld funds or found PSC costs unallowable under any of these other contracts.  KBR is the only contractor the Government has sued to recoup the alleged costs of private security use.")  KBR might argue that this inconsistent treatment means that the United States does not really interpret the force protection clause to prohibit the use of PSCs.  *See* Def.'s Mem. ISO its Mot. to Compel

---

[12] The Government describes the burdens it anticipates in producing this information in its Opposition.  *See* Pl.'s Mem. ISO its Opp'n to Def.'s Mot. to Compel at 25–26, 31–32.  The Court understands that parties may be prone to exaggerate the burdens of discovery.  Nevertheless, considering the wide scope of some of KBR's demands, the Court finds that KBR's other contracts requests would place heavy burdens on the United States.

at 22 ("[Other] contracts are relevant to the Government's interpretation of the contractual provisions at issue here….KBR is entitled to know whether there are instances in which the Government interprets the same or similar contractual language differently than its current interpretation of the relevant LOGCAP III provisions.").

As noted before, KBR has not sufficiently shown how these other contracts are similar to LOGCAP III, such that disparate treatment is a mark of inconsistency.  Moreover, even if the contracts are similar, there are many legitimate reasons why the Government would sue one contractor and not another.  Perhaps the contractor asked permission to use PSCs before charging their use to the Government.  Perhaps the charges were minor, isolated incidents that the Government decided not to pursue—courts encourage parties to settle their differences without resorting to litigation.  The reasons are largely irrelevant.  The point is that the Government has discretion to sue for some instances of breach and not others.[13]  This perceived "inconsistency" does not necessarily mean the Government has an inconsistent position on the meaning of the force protection clause.

On the other hand, it would be quite relevant if the Government litigated a contract with a similar force protection provision and took a completely different position.  Through application of judicial estoppel, this Court could preclude the Government from interpreting the force protection clause in a way contrary to its earlier position.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest have changed, assume a contrary position[.]").  This doctrine only applies to positions the Government

---

[13] To the extent that the Government even sees a breach.  If the contractor asked permission to use PSCs, then the Government may not perceive a breach at all.  Because the contacts are not cookie cutter, and are customized to fit the unique demands of each agreement, the conditions under which a contractor could charge for PSCs could differ (even when the force protection language is similar).

takes in legal proceedings.  It does not extend to the actions of the Government during the normal course of performance of its non-LOGCAP III contracts.  Therefore, KBR does not need extensive discovery to find out if the Government took an inconsistent position that would be relevant, under judicial estoppel, to one of KBR's defenses.  All KBR would need is a Westlaw or Lexis account and some first-year associates.

KBR seeks wide-ranging, voluminous discovery on matters outside the scope of the dispute, in the hope that something relevant will turn up.  Exercising its wide discretion to tailor the scope of discovery, and implementing its mandate to limit discovery per Rule 26(b)(2)(C), the Court denies KBR's motion to compel the production of documents relating to the United States other contracts relating to private security.

### D.      United States' Cross-Motion to For Protective Order and to Compel KBR to Identify which KBR Invoices Contain PSC Costs

In opposing KBR's motion to compel, the United States filed a Cross-Motion for a Protective Order, Or in the Alternative, a Motion to Compel and Stay [84].  The Court hopes that, in light of today's ruling, KBR will voluntarily withdraw its efforts to seek discovery on force protection issues not relating to LOGCAP III.  The Court also trusts that KBR will cease its efforts to have the Government provide a different answer to Interrogatory 1.  Even though the deadline for fact discovery has passed, the Court will grant KBR leave to amend or withdraw its interrogatories, requests for the production of documents, and deposition notices to conform to this opinion.

This Court will allow discovery on force protection issues related to LOGCAP III, but not compel the production of documents relating to other contracts.  The parties have not clearly

agreed on which requests, interrogatories, and depositions relate to "other contracts."[14]   The Court wants to give the parties the first opportunity to determine which requests should be amended or withdrawn in light of this opinion.   The parties—as they discuss the additional discovery on the force protection issue—might be able to resolve these issues on their own, without the need for a court-issued protective order.   If KBR continues to seek discovery on issues disallowed by this opinion, however, the Court invites the United States to renew its motion for a protective order.

The United States' motion in the alternative—compelling KBR to list which if its invoices contain PSC costs if the Court compels the *United States* to list which of KBR's invoices contain fraudulent charges—is mooted by the fact that the Court did not grant KBR's motion to compel on Interrogatory 1.

### E.      Other Motions Mooted by the Court's Action Today

Resolving KBR's Motion to Compel and the United States' cross-motion moot several related motions.   KBR's Motion to Expedite Consideration [76] and the United States' Cross-Motion for Briefing Schedule [78] concern the briefing and decision schedule of a fully-briefed, now-decided issue.   They are therefore moot.

## IV.      CONCLUSION

KBR's Motion to Compel [75] asks the United States to provide three categories of information: first, identification of KBR invoices containing disputed PSC charges; second, documents relating to force protection; and third, documents relating to other Government contracts containing force protection provisions.   The Court DENIES KBR's motion as to the first and third categories of information.   The United States adequately responded to KBR's

---

[14] That does not mean that the parties disagree—it is just not clear from the pleadings whether KBR and the United States agree on which requests are at stake.

Interrogatory 1, and KBR has the documents and information needed to find the invoices at issue.  The Government's contracts with other companies are not relevant to the issue at hand, a contract dispute between KBR and the United States over LOGCAP III.  To the extent that these documents would have any value to KRB, such value is substantially outweighed by the burden and expense discovery would place on the United States.

The Court is inclined to grant, with limitations, KBR's motion to compel the production of evidence relating to the United States' force protection obligations to KBR and its subsidiaries under LOGCAP III.  Although this Court has dismissed KBR's counterclaim, the United States' compliance (or lack thereof) with its force protection obligations under LOGCAP III may be relevant to whether it was reasonable for KBR to charge for PSCs.  However, such discovery would need to be limited to the United States' obligations under LOGCAP III, and may not extend to any obligations the United States had to KBR under other contracts, or its obligations to other contractors under different contracts.  KBR would need to weigh the costs and burdens that this request would place on the United States, and should narrow its request, if needed, to offset any undue burdens.

An agreement between the parties is almost always the best way to resolve a discovery dispute.  Although the parties' efforts have yet to bear fruit, the Court hopes by narrowing the issues and indicating where it thinks discovery is appropriate, the parties can find a solution.  To that end, the Court ORDERS the parties to meet and confer within seven (7) days of this date. The parties should discuss the proper scope and timeline for discovery on the force protection issue, and which of KBR's discovery requests should be withdrawn or amended to conform to this opinion.  Within thirty (30) days of this date, the parties should apprise the court on their progress.  Hopefully, the parties will inform the Court of their compromise and submit a joint

order to schedule the remaining discovery.  However, if the parties cannot reach an agreement within thirty (30) days, the Court will either direct the parties to continue their negotiations or enter its own discovery order.

Resolution of this matter moots KBR's Motion to Expedite Consideration [76] and the United States' Cross-Motion for Briefing Schedule [78].  The motion in question has been fully briefed and considered.  Furthermore, the Court deems the United States' Cross-Motion for Protective Order [84] moot, as the issues presented therein have been addressed by the Court's consideration of KBR's Motion to Compel [75] and its Order that the parties meet and confer.  If KBR persists in seeking discovery on impermissible matters, the United States may renew its motion for protective order.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 31, 2012.