**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 10-cv-530 (RCL) |
| KELLOGG BROWN & ROOT SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Before the Court is plaintiff's Motion for a Protective Order Regarding KBR's Untimely

Rule 30(b)(6) Notice, May 25, 2012, ECF No. 98.   Upon consideration of the motion, the

opposition and reply thereto, and the record herein, the Court will deny the plaintiff's Motion for

a Protective Order.

I.     **BACKGROUND**

This case concerns a contract dispute between plaintiff United States and defendant KBR

(formerly doing business as "Kellogg Brown & Root Services, Inc.").  In 2001, at the beginning

of American military action in Iraq, the United States awarded a large logistical services contract

to KBR, known as "LOGCAP III."  Under LOGCAP III, KBR provided various services—such

as supplying food—to American troops stationed in Iraq.  In executing LOGCAP III, KBR and

its subcontractors allegedly hired armed private security companies ("PSC") to afford additional

protection.  The United States contends that KBR then passed on the costs of these PSCs to the

United States by including those charges in its invoices. The Government[1] claims, under the terms of LOGCAP III, that KBR could not pass on these costs. *See* Compl. ¶¶ 7–12, Apr. 1, 2010, ECF No. 1. The United States argues that the contract stipulates that all force protection be provided by the U.S. Military, LOGCAP III, ¶ H-16 at 98, and that KBR could not arm any of its personnel without seeking the permission of Theater Commander. *Id*. at ¶ H-21, at 101.[2]

The United States brought suit in this Court on April 1, 2010. In its complaint, the Government alleged a violation of the False Claims Act, breach of contract, unjust enrichment, and payment by mistake. Compl. ¶¶ 33–43. In August 2011, this Court dismissed the unjust enrichment and payment by mistake causes of action, but did not dismiss the False Claims Act or breach of contract claims. *U.S. v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 161 (D.D.C. 2011). Thereafter the parties submitted proposed discovery and trial plans; on October 5, 2011, the Court entered a Scheduling Order to govern discovery in this action. ECF No. 65. This Scheduling Order established a fact discovery period commencing on October 30, 2011 and concluding on May 1, 2012. *Id.*

This period of discovery was not without disputes. On February 9, 2012, KBR brought a Motion to Compel discovery against the United States, seeking discovery on force protection matters and more detailed interrogatory answers. Def.'s Mot. to Compel Discovery, Feb. 9, 2012, ECF No. 75. Recently this Court ruled on that motion, denying in part KBR's motion. *U.S. v. Kellogg, Brown & Root Servs., Inc.*, __ F. Supp. 2d __, 2012 WL 3776708 (D.D.C. Aug. 31, 2012) (ECF Nos. 116, 117). The Court denied KBR's request for "documents and

---

[1] Following the convention established by the parties in their briefs, the Court will refer to the plaintiff as "United States" and "the Government" interchangeably.

[2] The Court discussed the factual background of this case in more detail in an earlier opinion, at *U.S. v. Kellogg Brown & Root Servs., Inc.,* 800 F. Supp. 2d 143, 146–47 (D.D.C. 2011).

information relating to its contracts and interactions with other prime contractors in Iraq that relate to armed private security" and other matters beyond the parties' obligations under LOGCAP III.  *Id*. at *3, *17–*18.  The Court found that KBR is entitled to discovery relating to the United States' obligations under LOGCAP III to provide force protection to KBR and its subsidiaries.  *Id*. at *17–*18.  It ordered the parties to meet and confer to discuss the proper scope and schedule for this additional discovery, and report to the Court within 30 days.  *Id*.  These negotiations are ongoing.

## II.   LEGAL STANDARD

The Court has the power to issue a protective order under Federal Rule of Civil Procedure 26(c):

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending….  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

F.R.C.P. 26(c).  Powers of the Court include "forbidding the disclosure or discovery; specifying terms, including time and place, for the disclosure or discovery;" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery into certain matters[.]"  *Id*. (original formatting omitted).  The party requesting the protective order bears the burden of showing the good cause contemplated by the Rule.  *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998) (Lamberth, J.).  In most cases, "the party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *Id*.  The moving party "has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify an order."  *Prozina Shipping Co., Ltd.*

*v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998).  The showing required under Rule 26(c) must be sufficient to overcome the other party's legitimate and important interests in trial preparation.  *See Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) ("[T]rial preparation and defense…are important interests, and great care must be taken to avoid their unnecessary infringement.").

Courts have been hesitant to issue protective orders that would completely prohibit the taking of a deposition.  *See, e.g., Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); *Bucher v. Richardson Hospital Auth*., 160 F.R.D. 88, 92 (N.D. Tex. 1994) (stating that protective orders prohibiting depositions are "rarely granted" and then only if the movant shows a "particular and compelling need" for such an order); *Frideres v. Schlitz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("Protective orders prohibiting depositions are rarely granted."); *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D., 92 96 (S.D. Iowa 1992) ("Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances."); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

On the other hand, Courts have been more welcoming of protective orders against untimely discovery notices.  In an opinion granting a protective order against an untimely Rule 45 subpoena *duces tecum, Dag Enterprises, Inc. v. Exxon Mobil Corp*., 226 F.R.D. 95 (D.D.C. 2005), Judge Kollar-Kotelly explained the importance of following the deadlines contained in a

Court's scheduling order:

> A Scheduling Order is "intended to serve as 'the unalterable road map (absent good cause) for the remainder of the case.'" *Olgyay v. Soc. for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996) (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia* at 39 (Aug. 1993)). "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Indeed, "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier." *Id.* As such, Rule 16 of the Federal Rules of Civil Procedure makes plain that a scheduling order entered by a district judge "shall not be modified except upon a showing of good cause and by leave of the district judge...." Fed.R.Civ.P. 16(b); *see also* LcvR 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause.").

226 F.R.D. at 104. As this case indicates, respect for the scheduling order and discovery deadlines can provide all the good cause needed to issue a protective order.

The Court may amend a scheduling order to reopen discovery under Federal Rule 16(b) and Local Rule 16.4(b). F.R.C.P. 16(b); LcvR 16.4(b); *see also Myrdal v. District of Columbia,* 2007 WL 1655875, *2 (D.D.C. June 7, 2012) (Lamberth, J.) (applying 16(b) and 16.4(b) to motion to amend scheduling order). Amending a scheduling order under these rules requires a showing of good cause. *See Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (Lamberth, C.J.) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.") (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). A party may move to extende discovery under Rule 16(b), and Local Rule 16.4(b) allows the Court to amend a scheduling order at any time when it finds good cause to do

so.  *See* LcvR 16.4(b) ("The court may modify the scheduling order at any time upon a showing of good cause.").  The primary factor in determining whether good cause exists is the diligence of the party seeking discovery before the deadline.  *See Johnson*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment….If the party was not diligent, the inquiry should end."); *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495, *6 (D.D.C. June 1, 2007) (collecting cases).

## III.   DISCUSSION

This is a close case.  There is a real tension between a Court's reluctance to grant a protective order preventing a deposition and a Court's strong interest in protecting its scheduling orders.  KBR was, in many ways, diligent in seeking discovery.  However, this diligence fell short of filing a Rules-compliant 30(b)(6) deposition notice [3] by close of discovery.  Complicating matters further, this Court recently decided on KBR's Motion to Compel, allowing discovery on matters related to the United States' provision of force protection to KBR as required under the LOGCAP III contract.  *KBR*, 2012 WL 3776708, *17–*18.  The parties are currently negotiating the proper scope and schedule for that additional discovery.  *See id.*

---

[3] Federal Rule of Civil Procedure 30(b) sets forth the requirements for deposition by oral examination.  Rule 30(b)(1), which applies to all deposition notices, states:

> A party who wants to depose a person by oral questions must give reasonable written notice to every other party.  The notice must state the time and place of the deposition and, if known, the deponent's name and address.  If the name is unknown, the notice must provide a general description sufficient to identify the person or particular class or group to which the person belongs.

F.R.C.P. 30(b)(1).  Specific to notices or subpoenas directed at an organization, Rule 30(b)(6) provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the maters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify….The persons designated must testify about information known or reasonably available to the organization.

F.R.C.P. 30(b)(6).

The United States' position is simple:  KBR did not serve a valid, Rules-compliant 30(b)(6) deposition notice within the fact discovery period.  Pl.'s Mot. for Protective Order ("Pl.'s Mot."), May 25, 2012, ECF No. 98.  On or about November 17, 2011 KBR provided the United States a draft, unsigned Rule 30(b)(6) deposition notice.  Ex. 2 to Pl.'s Mot.  This request failed to comply with the requirement that all discovery requests be signed.  F.R.C.P 26(g).  Toward the end of February 2012, KBR served the United States with a signed Rule 30(b)(6) deposition notice.  Ex. 7 to Pl.'s Mot.  However, as the United States contends, this "notice failed to set a date and time for a deposition as required by the Rules[.]"  Pl.'s Mot. 3 (citing F.R.C.P. 30(b)(1)).  The Government tentatively agreed to allow a deposition to take place on May 1, 2012, but the Government withdrew its consent on April 23, 2012.  *Id.* at 4.  The May 1, 2012 deadline for fact discovery passed without either party filing for an extension.  Nevertheless on May 9, 2012, KBR served a Rule 30(b)(6) deposition notice on the United States.  *Id.*  The United States now seeks a protective order relieving it from any obligation to respond to that untimely notice.  *Id.* at 6.

Technically, the United States is correct:  KBR failed to serve an official, Rules-compliant 30(b)(6) notice on the United States before fact discovery ended.  KBR seems to concede this—rather than argue that its earlier attempts were Rules compliant or that its May 9 notice was timely, KBR's opposition brief focuses on KBR's efforts to schedule the depositions and how the United States delayed these efforts.  *See* Def.'s Opp'n to Pl.'s Mot. for Protective Order ("Def.'s Opp'n") *passim*, June 11, 2012, ECF No. 99.  Although KBR's notice was untimely, this does not automatically entitle the Government to a protective order.  The Court may "modify the scheduling order at any time upon a showing of good cause."  LcvR 16.4(b).  Furthermore, the Court may "exercise considerable discretion in handling discovery matters,"

including deciding whether to reopen or extend discovery.  *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *see also United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984) (D.C. Circuit will only reverse discovery rulings in "unusual cases" where there has been clear abuse of discretion); *Childers v. Slater*, 197 F.R.D. 185, 187 (D.D.C. 2000) ("[T]he courts of other circuits have held that '[w]hether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion.'") (quoting *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)).  The Court will permit KBR's late Rule 30(b)(6) deposition notice because it finds KBR was reasonably diligent in seeking the requested-for discovery and the United States may have obstructed KBR's efforts. The United States will not suffer undue prejudice, burden, or expense if the Court does not grant a protective order.  The fact that the Court recently permitted discovery on contractual force protection issues also counsels against granting the Government's proposed protective order.

When considering whether there is good cause to amend a scheduling order, the Court focuses on the diligence of the party seeking discovery.  *See Johnson*, 975 F.2d at 609.  If the party was not diligent in seeking the requested information before the close of discovery, then no good cause exists.  *Id*.  Here, the Court finds that KBR was reasonably diligent.  KBR made several attempts to schedule the depositions within the time permitted.  They provided a draft 30(b)(6) deposition notice to the United States on November 17, 2011.  *See* Ex. 2 to Pl.'s Mot. This discovery notice did not meet the technical requirements of the Rules (it was unsigned) because this informality was "part of the parties' cooperative discovery approach."  Pl.'s Mot. 2; *see also* Def.'s Opp'n 2 ("On November 15, 2011, KBR served the Government a deposition notice, to which the Government replied that it preferred a more informal process of scheduling

depositions.   Accordingly, KBR sent the Government an informal draft 30(b)(6) deposition

notice on November 17, 2011[.]").   In fact, the Government itself proposed that the parties

schedule depositions informally, rather than submitting fully Rules-compliant notices.   *See* Ex. 1

to Def.'s Opp'n (Brian Hudak, Assistant United States Attorney:   "Moving forward, I believe it

will be more efficient for us to meet and confer before serving specific deposition notices in this

case….I would propose that when a party intends to notice a deposition, that party's counsel

informally lets other counsel know of that intent and some proposed dates[.]").

KBR again served a proposed 30(b)(6) notice to the Government on January 26, 2012.

Ex. 3 to Def.'s Opp'n.   This letter failed to set an exact date and time for the deposition, as

required under Rule 30(b)(1), but gave a range of proposed dates in line with the parties'

agreement to handle discovery informally.   *Id.*   Later in February, KBR sent a more formal

notice that complied with all the requirements of 30(b)—save for stating that the depositions

shall occur at "times and dates mutually agreed to by the parties" rather than specifying specific

dates.   Ex. 11 to Def.'s Opp'n.   KBR made further efforts, sending the Government emails

detailing the subject matter, time, and place of the proposed depositions.   Exs. 4, 5 to Def.'s

Opp'n.   The Government objected to these deposition notices as premature.   *See* Exs. 6, 7 to

Def.'s Opp'n.   Eventually, KBR was able to schedule a deposition for May 1, 2012, *see* Ex. 8 to

Def.'s Opp'n, but the Government cancelled after receiving a decision from the Armed Services

Board of Contract Appeals ("ASBCA") relating to parallel administrative action.   *See* Ex. 9 to

Def.'s Opp'n.   The next step KBR took was to file a formal Rule 30(b)(6) deposition notice on

May 9, 2012—eight days after fact discovery closed.   *See* Ex. 1 to Pl.'s Mot.

From this history, it appears KBR worked with reasonable diligence and in good faith to

schedule the depositions.   KBR did fail to file a completely Rules-compliant notice within the

prescribed time.   However, the informality of KBR's prior notices came at the request of the Government's lawyers.   *See* Ex. 1 to Def.'s Opp'n.   KBR sent notices that were very close to complying with all the requirements of Rule 30(b), except that these notices left the dates open to the mutual agreement of the parties.   *See, e.g.,* Ex. 11 to Def.'s Opp'n.   This again tracks the Government's desire to handle scheduling matters informally.   As the United States' brief notes, "[T]he Government noted that KBR's February 2012 notice failed to specify a deposition date and time, but in the cooperative spirit that has embodied the Government's discovery efforts in this case, committed to working with KBR to identify appropriate dates and times."  Pl.'s Mot. 3. KBR's February notice was very detailed and gave the Government clear notice of the subjects KBR intended to explore during deposition.   Ex. 11 to Def.'s Opp'n.   All that was missing were the exact dates and times.

The Government's decision to cancel its pending deposition so it could respond to the ASBCA decision certainly did not help the parties accomplish all needed discovery within the prescribed period.   When the Government first received a formal Rule 30(b)(6) deposition notice on November 11, 2011, Ex. 2 to Def.'s Opp'n, it indicated that it preferred a more informal process.   Ex. 1 to Def.'s Opp'n.   KBR complied and submitted notices without exact dates.   The United States now uses the informality it requested as reason not to allow KBR to take the depositions in question.   After reviewing the exhibits, it does not seem that the United States was particularly eager to make its witnesses available, despite the efforts of KBR to arrange depositions informally.   *See* Exs. 6 & 7 to Def.'s Opp'n (Government objecting to deposition notices as premature); Ex. 9 to Def's Opp'n (Government postponing scheduled deposition after ASBCA decision).   This does not excuse KBR's behavior—KBR still failed to file a Rules-

compliant deposition notice during the discovery period. [4]   However, it does indicate that the United States may not suffer undue burden, expense, or prejudice if the Court does not grant a protective order.

If KBR had been perfectly diligent, it would have filed official notice on May 1, 2012 and the Court would not have to hear this motion.  By this untimeliness alone, the Court could be justified in granting a protective order.  *See Dag*, 226 F.R.D. at 104 (ordering protective order against untimely filing).  However, if protective orders necessarily followed untimely filings, that would be the rule.  *Cf. Jinks-Umstead v. England*, 227 F.R.D. 143, 153 (D.D.C. 2005) (allowing defendant's untimely discovery requests to stand).  Ultimately, the Court may consider whether good cause exists to allow the late request.  *Myrdal*, 2007 WL 1655875, *2.  It is up to the Court to manage its docket and decide which extensions or allowances are appropriate.  *See Beale v. District of Columbia*, 545 F. Supp. 2d 8, 16 (D.D.C. 2008) ("[T]he court's discretionary pronouncements are for it—not the parties—to enforce….A judge does not bind his own broad discretion by preemptively warning parties that he runs a tight ship.").  In this instance, since the Court has recently allowed for additional discovery, *KBR*, 2012 WL 3776708, *17–*18, it finds that allowing the untimely May 9, 2012 Rule 30(b)(6) notice to stand is reasonable.

The Court's recent opinion excluded certain topics from the proper scope of discovery, including, but not limited to, information relating to the Government's contracts and interactions with other prime contractors in Iraq that relate to armed private security.  *Id*.  The Court expects the parties to conduct discovery in accordance with that opinion and not seek discovery on matters previously disallowed by this Court's August 31, 2012 opinion.  *See generally U.S. v. KBR*, 2012 WL 3776708 (D.D.C. Aug. 31, 2012) (ECF Nos. 116, 117).

---

[4] The Government's email requesting depositions be handled informally also stated:  "Obviously, each party would reserve its rights to notice depositions within the time constraints of the rules and attempt to enforce notices[.]"  Ex. 1 to Def.'s Opp'n.

**IV.    CONCLUSION**

While the United States is correct that KBR did not file an official, Rules-compliant Rule 30(b)(6) deposition notice before the close of fact discovery, the Court finds that good cause exists to allow this untimely filing and deny plaintiff's Motion for a Protective Order.  KBR had been diligent in its efforts to schedule depositions and the Government knew, in detail, what information KBR sought.  While in other instances, it might be appropriate to grant a protective order against an untimely filing, the Court finds that the Government will not be unduly burdened or prejudiced.  The Court has recently ordered the parties to discuss discovery on the United States' force protection obligations to KBR under LOGCAP III.   Since additional discovery is forthcoming, the Court is more comfortable allowing an untimely deposition notice.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed, Royce C. Lamberth, Chief Judge, September 12, 2012.